[S. F. No. 1623.   Department Two.—June 6, 1899.]

In the Matter of the Estate of GEORGE H. NEWMAN, Deceased.

ESTATES OF DECEASED PERSONS—RIGHT OF WIDOW TO ADMINISTRATION—
  BIGAMY—FORFEITURE—RECOGNITION OF MARITAL RELATION.—The
  rights of a widow in the estate of her husband cannot be questioned on the claim that during the life of her husband she was
  unfaithful to her vows; and her right, as widow, to administer
  upon his estate is not forfeited by her bigamous marriage to
  another man, and her previous administration upon the estate
  of the latter, and receiving an allowance therefrom as his
  widow, where it appears that after the death of the bigamous
  spouse, the relations between the husband and wife were continued with knowledge of the facts.

ID.—ADMINISTRATION OF ESTATE OF BIGAMOUS SPOUSE—DECREE IN REM—
  ESTOPPEL.—The decree in rem in the administration of the estate
  of the bigamous spouse, was only conclusive as to the succession of his estate; and the marriage relation of the alleged
  widow of the bigamous spouse to her true husband was not
  part of the res then before the court. The decree created no
  estoppel upon her to show that she was the widow of her deceased husband, in subsequently petitioning for letters of administration of his estate.

ID.—BIGAMOUS MARRIAGE IN ANOTHER STATE—LAW AS TO COHABITATION.
  A bigamous marriage contracted under the laws of another
  state, followed by cohabitation for a required period of years
  in such state, is not rendered valid because such laws declare
  that cohabitation of the parties therein for such period is proof
  of marriage. Such laws assume that the parties are competent
  to marry; and such marriage, if legalized in that state, would
  not be recognized in this state as a dissolution of the former
  marriage.

ID.—GRANT OF LETTERS TO WIDOW—RESIDENCE—FINDING—INTENTION.—
  The residence of the widow in this state will be sustained in
  favor of a grant of letters of administration to her, if the court
  finds the fact of such residence, and of her intention to remain
  in California, and make it her future home, notwithstanding
  her testimony that she came to this state because her husband
  left an estate here, and would not have come if he had not left
  such estate.

ID.—"INTEGRITY" OF WIDOW—CONSTRUCTION OF CODE.—The fact that
  the widow was an unfaithful wife and violated her marriage
  obligation does not tend to show lack of "integrity" within the
  meaning of section 1350 of the Code of Civil Procedure.

APPEAL from an order of the Superior Court of Contra
Costa County granting letters of administration and from an

order denying a new trial of a contest for such letters.    Joseph
P. Jones, Judge.

The facts are stated in the opinion of the court.

. Minor & Ashley, for Appellant.

The wife who leaves her husband, and renounces all conjugal
intercourse with him, is not such a widow as is entitled to ad-
minister upon his estate.    (*Arthur v. Israel,* 15 Colo. 147; 22
Am. St. Rep. 381; *In re Davis,* 106 Cal. 456; *Prater v. Prater,*
87 Tenn. 78; 10 Am. St. Rep. 623, 627, 628; *Odiorne's Appeal,*
54 Pa. St. 175; 93 Am. Dec. 683; *Hettrick v. Hettrick,* 55 Pa. St.
290, 292; *Richeson v. Simmons,* 47 Mo. 20; *Dillinger's Appeal,*
35 Pa. St. 357; *Cogswell v. Tibbetts,* 3 N. H. 41; *Riggs v. Palmer,*
115 N. Y. 506.)    The New Hampshire judgment adjudging
Rose Ann Newman to be the widow of Coleman, and distributing
his estate to her, was a judgment *in rem,* and conclusive as to all
the world.    (*Merrill v. Harris,* 26 N. H. 142, 147; 57 Am. Dec.
360.)    That she was the widow of Newman was essential to the
jurisdiction to grant letters, and the grant of letters cannot be
questioned.    (*Stearns v. Wright,* 51 N. H. 600; *Gordon v. Gordon,*
55 N. H. 329, 402; *Hodgdon v. Southern Pac. R. R. Co.,* 75 Cal.
642, 648; *Boody v. Emerson,* 17 N. H. 577, 582; 2 Freeman on
Judgments, sec. 608; 1 Herman on Estoppel and Res Adjudicata,
24.)    Respondent was not a *bona fide* resident of California, hav-
ing come here to administer the estate, without which she would
not have come.    (*In re Donovan,* 104 Cal. 623.)

Hartley & Abbott, and W. S. Tinning, for Respondent.

The husband being at fault for the original separation from
his wife, she is not precluded by her action from administering
upon his estate.    (*Grieve's Estate,* 165 Pa. St. 126; *Reel v. Elder,*
62 Pa. St. 316; *Shafer v. Richardson,* 27 Ind. 122; *Cogswell v.
Tibbetts,* 3 N. H. 41; 1 Bishop on Marriage, Divorce and Separa-
tion, sec. 1521.)    The second marriage to Colburn was abso-
lutely void, and could not affect the status of Mrs. Newman as
the widow of her true husband.    (*Emerson v. Shaw,* 56 N. H.
418; *Dumbarton v. Franklin,* 19 N. H. 264; *Mountholly v. And-
over,* 11 Vt. 226; 34 Am. Dec. 685; *Patterson v. Gaines,* 6 How.
550-92; *Blossom v. Barrett,* 37 N. Y. 434; *Fenton v. Reed,* 4

Johns. 52; 4 Am. Dec. 244.)　The judgment in the settlement of
Colburn's estate was only conclusive of the settlement of that
estate, and does not estop the administrator to deny in this pro-
ceeding that she is the widow of her husband. The estoppel
here cannot be mutual, and is not binding. (*Williams v. Wil-
liams*, 3 Wis. 58, and cases cited; *Brigham v. Feayerweather*, 140
Mass. 411-15; *Parson v. Copeland*, 33 Me. 370; *Wellington Canal
Co. v. Hathaway*, 4 Wend. 480.)　The correspondence between
the husband and wife shows a recognition of the continuance of
the marriage relation between them, and was admissible as part of
the *res gestae*. (*Harris v. Tyson*, 24 Pa. St. 367; 13 Am. & Eng.
Ency. of Law, 265; *Commonwealth v. Jeffries*, 7 Allen, 548.)

THE COURT.—This is a contest for letters of administra-
tion.　There were three petitioners: the public administrator,
L. M. Cutting, a cousin of the deceased, and Rose A. Newman,
widow of deceased.　Letters were granted to the widow and
Cutting appeals.

Rose A. Newman and the deceased intermarried in New
Hampshire, November, 1856.　He was then nineteen years of
age and she was sixteen.　Within a very short time after the
marriage he came with his father to California.　There was,
however, no desertion, as the parties continued to correspond at
least up to 1862, recognizing in all their letters their marital
relation.　He did not prosper in California, but occasionally
sent her small sums of money.　In 1864 she, knowing that her
husband was still alive, and that he had not deserted her, and
although, as she testified, she received a letter from him about
a year before, went through the forms of marriage with one Col-
burn.　She continued to live with Colburn in this adulterous
and criminal relation for fifteen years, when Colburn died. She
had a daughter by this bigamous union, born in 1866.　Colburn
left an estate which apparently went to the child and petitioner,
as his widow, administered upon it and received an allowance
from the estate as his widow.

In 1883 petitioner, having heard that her husband was still
alive, had the hardihood to write to him, and he, in ignorance
of her criminal career, at once responded, recognizing his marital
obligations.　In this letter he said: "I was surprised to hear

from you after waiting so long for an answer to my last letter (about twenty years). I sent you some money to come out here on and never got any answer. I have been looking for you ever since. You could have found out that I was here if you had written to me instead of to the postmaster. . . . . Why did you not write before and let me know that you wanted help? I would have helped you. I wish you had come out here when I sent for you. I think it would have been better for you if you had. . . . . Write and let me know if you received that money I sent you to come out on. If so, why did you not come? (I believe it was in 1864.) Inclosed you will find ten dollars," et cetera.

It is evident that he had never had any thought of deserting her, and, unsuspicious of wrong on her part, sent her money while she was living in adultery with Colburn. After this letter they continued to correspond for about nine years. She says that she informed him by letter of her bigamous marriage, but his letters, put in evidence by her, disclose no such knowledge. Finally, about 1892, Newman ceased to write, why is not made to appear.

Newman died intestate in the county of Contra Costa on the twenty-fourth day of November, 1897, leaving an estate in said county.

The order made awarding letters of administration to Rose A. Newman is attacked upon various grounds. First, it is denied that she has the rights of a widow in the estate of Newman. The marriage is not denied, nor is it claimed that the parties were ever divorced, but it is argued that in some way she is estopped by her commission of the crime of bigamy and her passing for fifteen years as the wife of another, having a daughter born of this criminal union, her administering upon Colburn's estate, claiming the right so to do as his widow, and her utter disregard of her marital duties to Newman for some twenty years, and especially by the decree of the probate court of New Hampshire adjudging her to be the widow of Colburn.

That she was an unfaithful wife must be admitted. She testified that she married Colburn knowing that her husband was living and that she had received a letter from him about one year before her marriage. She knew she had not been divorced,

and she also knew that her husband had not deserted her. But the statute does not make adultery on the part of the wife, of itself, a forfeiture of marital rights. It only authorizes a divorce. It might be a good law to ordain that when one spouse has committed bigamy all rights with reference to the estate of the other are forfeited, but there is no such law.

There are cases in which it has been held that when a wife leaves her husband and renounces conjugal obligations before his death, she cannot be such a widow as was contemplated by the legislature when it provided for her rights in reference to the husband's estate. (*Odiorne's Appeal*, 54 Pa. St. 175; 93 Am. Dec. 683.)

By the bigamous marriage it might be held that the petitioner renounced her conjugal obligations, but after the bigamous spouse was dead she resumed her relations with Newman, who continued to recognize the relation—apparently even after knowledge of the facts. Suppose she had in response to his letters come to California, and they had lived together as husband and wife, could her rights as a widow have been denied, even though it were proved that he was kept in utter ignorance of her delinquency? Of course not. The rights of a widow in the estate of her husband cannot be questioned on the claim that during the life of her husband she was unfaithful to her vows.

The case of *Arthur v. Israel*, 15 Colo. 147, 22 Am. St. Rep. 381, was a hard case, and perhaps was well disposed of. There is nothing in it which has any bearing upon this case. The matter of succession is purely statutory, and it would be better for the legislature to provide for such cases, which may arise anywhere, rather than put the court to the necessity of such logic to do justice.

It is contended that the decree of the probate court of New Hampshire adjudging that petitioner was the widow of Colburn is conclusive that she was not the wife of Newman. Had she died in New Hampshire, leaving an estate, such decree could not have barred Newman; therefore, it could not estop her. A probate decree, according to our rulings, is *in rem*, and concludes all the world as to the succession. The marriage relation of Newman and wife was not the *res* before the court in that proceeding.

The law of New Hampshire, declaring that cohabitation for a period of years is proof that the parties so cohabiting were married, is cited, and it is contended that petitioner so cohabited with Colburn, and therefore was his lawful wife and could not also have been Newman's. The laws of New Hampshire can declare how marriage shall be entered into there, but they assume that the parties are competent to marry. But if this were not so, and the laws of New Hampshire authorized married people to marry again in that state, such marriage would not be recognized here as a dissolution of the former marriage.

It is contended that petitioner was not a resident of California, and therefore was not entitled to letters. She testified that she came to this state because her husband left an estate here; that if he had not left such an estate she would not have come, but that being here it was her intention to remain and make this her future home. The court found in her favor. Her intention constituted the material issue, and there certainly was evidence to support the finding. The difference between this case and the case of *In re Donovan*, 104 Cal. 623, is, that there the court found against the petitioner as to the fact. In each case this court must abide the conclusion.

It is said that the evidence shows that the petitioner lacks integrity, and therefore should not have been appointed. She was shown to have been an unfaithful wife, and to have violated her marital obligation, but that does not tend to show lack of integrity within the meaning of the statute. (*In re Bauquier,* 88 Cal. 302.)

We think the letters passing between the husband and wife were properly received in evidence.

Order affirmed.