[S. F. No. 3200. Department Two.—September 22, 1903.]

In the Matter of the Estate of JOHN P. HARRINGTON, Deceased. AMELIA HARRINGTON, Appellant, v. UNION TRUST COMPANY, Executor, etc., et al., Respondents.

HUSBAND AND WIFE—MISTAKEN BELIEF OF DEATH—SECOND MARRIAGE AFTER FIVE YEARS—VALIDITY—FAMILY ALLOWANCE—CASE AFFIRMED.—A second marriage contracted in good faith by the wife of a former husband, who was absent and not known by her to be living, or was generally reputed to be dead for the space of five successive years immediately preceding such second marriage, is valid until its nullity is adjudged by a competent tribunal; and if not so annulled, the wife cannot claim a family allowance from the estate of her former husband.

APPEAL from an order of the Superior Court of the City and County of San Francisco refusing a family allowance. James M. Troutt, Judge.

The facts are stated in *Estate of Harrington, ante,* p. 244.

M. C. Hassett, and Samuel Shortridge, for Appellant.

Heller & Powers, Martin Stevens, and Beverly L. Hodghead, for Respondents.

THE COURT.—This is an application by the alleged widow praying the court in probate to award her a family allowance from the estate of John B. Harrington, deceased. The court refused the application. The evidence upon the hearing is in all respects the same as that introduced upon the same alleged widow's application for a homestead, disposed of in the appeal in *Estate of Harrington, ante,* p. 244, filed September 18, 1903.

Upon the authority of that case the order appealed from is affirmed.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank in this case, and in case No. 3201, *ante,* p. 244, and filed the following opinion on the 17th of October, 1903:—

BEATTY, C. J.—I dissent from the order denying a re-hearing of these causes and from the conclusions of the court upon which the judgments are affirmed.

The case here differs from that presented in *Estate of New-man,* 124 Cal. 688, in one main particular. There the wife was guilty of bigamy and adultery, but was accorded all the rights of a widow in the estate of the husband she had deserted and betrayed, and that after she had claimed and received a widow's share out of the estate of her bigamous husband. Here a wife who had been deserted for many years, honestly believing that her husband was dead, contracted a second marriage. She was—so the opinion of the court assumes—legally and morally innocent. When she heard that her husband was living, her second husband left her and has disappeared. She has received nothing from him, and because she is innocent she is denied any of the rights of a widow in the estate of her husband. Our law, in other words, as construed by the court, punishes the innocent and rewards the guilty. The argument by which this result is reached, as I understand it, is this: No woman can have two husbands; Mrs Newman's second marriage was void because she knew her husband was living, and, being void, had no effect upon her first marriage. Mrs. Harrington having good reason to believe her husband dead, her second marriage is not void, but only voidable, and remains valid until its nullity is adjudged by a competent tribunal; therefore, no such decree having been rendered, she was not the wife of Harrington when he died, and is not now his widow. This sounds like logic, but the soundness of any argument ought to be doubted when it leads to an absurd result; and the flaw in this reasoning, I think, consists in attributing too large a meaning to the word "valid" as used in the statute. It is clearly within legitimate rules of construction to give that word a qualified meaning, and to hold that it does not validate the second marriage for all purposes, but only for the purpose of remedying those evils which the legislature had in view.

I conceive that the only object of the legislature in the enactment of our statute was to secure to the children of such marriages the *status* and rights of legitimacy, and to the spouses their vested property rights as they should exist at the date of the discovery that the former husband or wife is still living.

I do not understand that the legislature intended, and, I think, we should be far from assuming,—as seems to be assumed in the opinion of the court,—that a doubly wedded wife, in the situation of Mrs. Harrington, can make her election between her two husbands, and keep the second by neglecting to have the marriage annulled, or get back the former by obtaining such a decree. I think the law intends that on the discovery that her first husband is living she shall cease to cohabit with either until by a decree of divorce the first, or by a decree of nullity the second, marriage is dissolved. In the mean time, however, there is nothing in the letter or policy of the statute to deprive her of her property rights in the estate of her first husband in case of his death, or of any vested right she may have as against her second husband.