[S. F. No. 4038.   Department Two.—June 12, 1905.]

In the Matter of the Estate of JOHN P. HARRINGTON, Deceased. AMELIA HARRINGTON, Appellant, v. EMMET K. KELLY et al., Respondents.

ESTATES OF DECEASED PERSONS—CLAIM OF WIDOWHOOD—LITIGATION UPON PETITION FOR HOMESTEAD—RES JUDICATA—DISTRIBUTION.— Where a claim of widowhood of a deceased person was litigated upon issue joined upon the petition of the alleged widow for a homestead, and was then determined against her, such determination is in its essence a judgment within the meaning of section 577 of the Code of Civil Procedure, and is *res judicata;* and she is estopped thereby from claiming widowhood upon distribution of the estate.

ID.—CONCLUSIVE DECISION UPON QUESTION OF FACT—NEW EVIDENCE.— A decision upon a question of fact in a former litigation which has become final is forever binding in every court between the parties to that litigation and their privies, and the fact liti-

gation cannot be relitigated because of the discovery of new facts or new evidence not before produced.

ID.—LAWS OF ANOTHER STATE—VOID SECOND MARRIAGE—PROOF OF WIDOWHOOD—ESTOPPEL NOT OVERCOME.—Where, in the former litigation, the laws of another state where a second marriage was contracted in the justifiable belief of the death of a former husband, which made the second marriage void from the beginning were not proved, and in the absence of such proof were presumed to be the same as the law of this state, though, if proved, they would have established widowhood, the proof of such laws upon the final decree of distribution cannot overcome the estoppel of the former judgment against the fact of widowhood.

ID.—DISABILITY—SUBSEQUENT ANNULMENT OF MARRIAGE—MERITS OF FORMER JUDGMENT.—The laws of such other state having made the second marriage void *ab initio,* the person claiming as widow was not under a disability in the first litigation merely because the second marriage was not formally annulled, and a subsequent decree of annulment of the marriage in the state where it was contracted cannot alter the case nor establish that the former judgment was not upon the merits.

APPEAL from a decree of distribution of the Superior Court of the City and County of San Francisco and from an order denying a new trial. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

M. C. Hassett, and Samuel Shortridge, for Appellant.

Heller & Powers, Beverly L. Hodghead, and Martin Stevens, for Respondents.

HENSHAW, J.—John P. Harrington died testate, and his estate was probated in the city and county of San Francisco. No mention was made in his will of Amelia Harrington, appellant herein. Upon the hearing of the executor's petition for distribution of the estate she appeared and filed her answer to the petition, and prayed that one half of the residue of the estate be distributed to her as the widow of the deceased. All the devisees mentioned in the will, saving one, appeared and filed opposition to the claim of the appellant as the surviving widow of the deceased. The court made its decree settling the account of the executor and distributed the estate according to the terms of the will, finding against the appellant's alleged right of succession. Amelia Harring-

ton moved for a new trial, which was denied, and she appeals from the decree and from the order denying her motion.

Twice before during the progress of the administration of the estate had Amelia Harrington appeared, in the one instance seeking a family allowance from the estate of deceased as his widow (*Estate of Harrington*, 140 Cal. 294, 73 Pac. 1000[1]); in the other, petitioning the court to set aside to her a homestead from the estate of deceased as his widow. (140 Cal. 244, 74 Pac. 136.) In both of these proceedings the devisees under the will, who appear as respondents on this appeal, contested her application, the sole question at issue being her relationship to the deceased and her *status* as his widow, as appears from the following excerpts from the opinion of this court in the last-cited case: "This case comes within a very narrow compass, the only point involved being whether the respondent is the widow of the deceased. The lower court held that she was not, and we think that determination was correct." Again, "Her right to have the court set apart to her as a homestead property of the estate of Harrington can be based only on the fact that she is his widow." The facts touching the relationship of this appellant to the deceased are set forth in the opinion from which quotation has just been made. She had been married to Harrington. After her marriage and in the belief that Harrington was dead she married in Michigan one Carley. Subsequently, and upon hearing rumors to the effect that Harrington was still alive, she and Carley voluntarily separated. No annulment of the marriage was had. Upon her former appeal it was contended that as her second marriage to Carley under the laws of the state of Michigan was absolutely void *ab initio*, her *status* as the wife of Harrington had never been changed or affected by that void marriage, and that, so remaining his wife, she became upon his death his widow. The laws of Michigan were not offered in evidence in support of this contention, and under well-settled principles of law this court held that in the absence of such proof it would be assumed that the law of Michigan is like that of this state (*Estate of Richards*, 133 Cal. 526, 65 Pac. 1034), and that such being the condition of the law her second marriage was not void, but voidable merely. Upon the present hearing she offered,

---

[1] 98 Am. St. Rep. 51.

as additional evidence in support of her claim of widowhood, the laws of Michigan, declaring such a marriage to be not voidable merely, but absolutely void, and the judgment of a court of competent jurisdiction of the state of Michigan formally annulling the second marriage. The respondents introduced in evidence the judgments or decrees of the court denying her right to homestead and family allowance, with the decisions of this court upon appeal therefrom, and contended that the question of her widowhood had been adjudicated against her, and that an estoppel by judgment was therefore raised against this second presentation of her claim. Whether or not the former determination of the court in probate does operate to raise such an estoppel by judgment is the question in this case.

1. Appellant contends that the *status* of husband and wife was created between herself and John P. Harrington in the state of Michigan, and that from this *status* neither could be relieved except by death or divorce, that no divorce having been granted they remained husband and wife until Harrington died, that the validity or invalidity of the marriage of appellant to Carley must be determined by the laws of Michigan, and if void under those laws was void everywhere, that it was void under the laws of Michigan, and that the matter of succession being a statutory right, fixed by law, cannot be made to depend upon any act or omission of the widow or other heir claiming an estate. All these grounds can amount to no more than a declaration that if, in law, appellant was in fact the widow of Harrington, no estoppel by conduct, by deed, or by judgment, can be raised against her to prevent her from asserting her claim. We are, however, cited to no authority supporting such a proposition, and in fact it may be safely said that no such authority can be found. So far as appellant is concerned, she may raise an estoppel against the assertion, in her own interest, of the claim of widowhood as readily as she may estop herself from asserting any other legal right. So that the sole question, as we have said, remains and is whether the judgment of the court in probate in the homestead proceeding raises an estoppel against her attempted litigation of the same claim of widowhood upon distribution.

Herein appellant first contends that the doctrine of *res*

*judicata* does not apply to mere orders made on motions in pending proceedings, and this is strictly true. But was this a mere order made on motion in a pending proceeding, or was it in its essence a final judgment? A motion is an application for an order or direction of the court not included in a judgment. (Code Civ. Proc., sec. 1003.) A judgment is the final determination of the rights of the parties in an action or proceeding. (Code Civ. Proc., sec. 577.) Section 1716 of the Code of Civil Procedure provides that "All issues of fact joined in probate proceedings must be tried in conformity with the requirements of article II, chapter 2, of this title, and in all such proceedings the party affirming is plaintiff and the one denying or avoiding is defendant. *Judgments* therein, on the issue joined, as well as for costs, may be entered and enforced by execution or otherwise by the court, as in civil actions." And section 963 of the Code of Civil Procedure declares that an appeal may be taken from a *judgment* or order "against or in favor of setting apart property or making an allowance for a widow." In her petition for a homestead this appellant put before the court her demand to valuable property of the estate, based upon her claim of widowhood. Issue was joined upon this claim, the proceeding was an adversary contested proceeding, and its outcome "finally determined the rights of the parties in that proceeding." Called by what name one may elect, the determination of the court in that matter was essentially a judgment within the meaning of the definition above given. The legislature itself regarded such a determination as a judgment when, in section 963, *supra,* it provided that an appeal might be taken from such "judgment" against or in favor of setting apart property for the widow.

2. It is next contended that as the decision in the homestead proceeding, finding and declaring that she was not the widow, was upon a question of fact, such decision did not become the law of the case. The rule undoubtedly is, that the decision of a court on appeal, as to a question of fact, does not become the law of the case, for the very obvious reason that upon a retrial of the issues in the same case the facts may be made differently to appear. But where an issue of fact vital to the controversy has been tried between parties litigant, and a judgment depending for its sufficiency upon

the finding of fact has become final, that determination of fact is forever binding in every court between the parties to that litigation and their privies. Otherwise, as has been repeatedly declared by the courts, there could be no end to litigation. "If a new action could be commenced and a case retried because of the discovery of new facts after the case had been finally disposed of, there would be no end of litigation, and a case be kept in court forever." (*Quirk* v. *Rooney,* 130 Cal. 505, 62 Pac. 825.) And again: "If she failed to assert her claim properly, or to present the proper evidence in the first suit, she will not now be permitted in a second to litigate it. The principles herein stated are elementary." (*Bingham* v. *Kearney,* 136 Cal. 175, 68 Pac. 597.) And says Freeman on Judgments (4th ed., sec. 260): "It is sufficient that the *status* of the action was such that parties might have had their lawsuit disposed of according to their respective rights, if they had presented all their evidence and the court had properly understood the facts and correctly applied the law. But if either party fails to present all his proofs, or improperly manages his case, or afterwards discovers additional evidence in his behalf, or if the court finds contrary to the evidence or misapplies the law—in all of these cases the judgment, until corrected or vacated in some appropriate manner, is as conclusive upon the parties as though it had settled the controversy in accordance with the principles of abstract justice."

3. It is contended that to be such a judgment as to raise an estoppel, the judgment must have been upon the merits, and that the judgment in the homestead proceedings was not upon the merits because of the temporary disability of this appellant at that time. This temporary disability, it is asserted, lay in the fact that at the time of that hearing the court in Michigan had not entered its decree annulling the marriage. But, in truth, she was under no disability. She failed merely in the production and introduction of evidence which was as available to her at that time as it was upon the last hearing, the evidence to which we refer being the laws of the state of Michigan. Had she supported her contention that her marriage to Craley was absolutely void *ab initio,* by proof of the laws of Michigan, it would have been sufficient for her case, and she would of necessity have been adjudged the widow

of Harrington, as was the petitioner in the *Estate of Newman,*
124 Cal. 692, 57 Pac. 686. In her brief appellant states that
"it was proved by the laws of Michigan, set forth in the
agreed statement of facts admitted in evidence, that under
those laws the pretended marriage entered into between
James Carley and Amelia Harrington, in the year 1886, was
absolutely void without any decree of divorce or legal process
to so declare it." If that be so, then her misfortune was not
that she was laboring under any disability at the time of the
hearing in the homestead proceeding, but it lay simply in
her failure to introduce and avail herself of evidence at
hand in proof of her claim. But, as is said in *Bingham* v.
*Kearney,* 136 Cal. 135, 68 Pac. 597: "If she failed to assert
her claim properly or to present the proper evidence in the
first suit, she will not now be permitted in a second to liti-
gate it."

4. It thus having been made to appear that the decree of
the court refusing to set aside a homestead is in its essence
a judgment, and that the issue, and indeed the sole matter in
controversy in the proceeding, was the *status* of this appel-
lant as the widow of Harrington, deceased, and it further
having been made to appear that this issue was directly
involved, fully litigated, and specifically decided, against the
contention of the appellant, and, finally, it appearing that
appellant, in the homestead proceedings, was not under any
disability, and that her petition was not denied for a mere
failure of proof in the nature of nonsuit, there is left for
consideration but one further contention of the appellant,
which is, that, notwithstanding the existence of all these facts,
still the judgment in the homestead proceeding is not *res
judicata* in proceedings upon distribution. Appellant here
relies upon the decision of this court in *Estate of Nolan,* 145
Cal. 559, 79 Pac. 428, and upon certain adjudications of
sister states, and the consequence to her of an adverse adjudi-
cation prompts a review of these cases.

In *Estate of Nolan,* Mary Nolan had filed a petition for
letters of administration upon the estate, alleging that she
was the widow of the deceased. Letters of administration
were issued to her, and she acted as such administratrix. No
appeal was taken from this decree. Subsequently she ob-
tained an order granting her a family allowance as widow,

and no appeal was taken from such order. Thereafter, on petition for partial distribution of the estate and after a hearing by all parties and after a contest for the first time raised upon the question of her *status* as widow, the court found that she was not and never had been the widow of the deceased, and distributed the estate to the heirs at law. The pretended widow acquiesced in this decision and never appealed from it. Subsequently, in the settlement of her account objections were raised to the payment of some $625 as family allowance under the order which long before had become final. This court decided merely that, owing to the finality of the order of family allowance, her rights under it were fixed, and that the subsequent finding and decree of the court upon proceedings for distribution to the effect that she was not his widow could not be taken advantage of to defeat her rights under a judgment which had become conclusive in her favor. It is, however, here to be noted, that in the granting of letters of administration and in the making of the family allowance, the question of her widowhood was never controverted. It was not an issue in either proceeding. In neither of those two adjudications had there been a hearing and determination upon the merits, and doubtless for this reason Mary Nolan did not plead either decree in bar of the proceedings on distribution. This case, however, must be construed with that of *Howell* v. *Budd,* 91 Cal. 342, 27 Pac. 747. There this court, in Bank, had under consideration the effect of an adjudication under an application for letters of administration, where the right of the petitioner was contested solely upon the issue as to whether or not she was the child of the deceased, and reviewing at length the rule and doctrine of *res judicata,* particularly as applied to determination of heirship in probate proceedings, we declared that the judgment of the court upon such hearing, if not reversed upon appeal, is a determination for all time and in all courts, so far as the parties to the proceeding are concerned. With particularity it was pointed out that so to be an adjudication upon heirship or right of succession the matter must turn upon that contested issue, and this fact must be made to appear; but when the right does so turn, and is so made to appear by the grant of administration, says Greenleaf (Ev., sec. 550), "the sentence

or decree upon that question is conclusive everywhere in a suit between the same parties for distribution." (See, also, *Garwood* v. *Garwood,* 29 Cal. 514.)

Of the adjudications from sister states which appellant cites as being directly in point, the first is *Bradley* v. *Johnson,* 49 Ga. 412. The facts in that case were, that letters of administration upon the estate of one Bradley had been issued to Emma Bradley, claiming to be his widow. An appeal was taken to the superior court and a trial by jury had, the jury rendering the following verdict: "We, the jury, find that John Johnson, applicant, is entitled to administration on the estate of Thaddeus W. Bradley, deceased." Judgment was entered on this verdict. Subsequently the alleged widow petitioned for an accounting and distribution of Bradley's estate. A trial by jury was had, and the administrator interposed, by way of estoppel to the claim of the alleged widow, the judgment in the former proceeding. The appellate court declared, in substance, that it did not appear that there had been a trial of the question of her widowhood upon its merits, and that it was decided at all could be gathered only by inference, saying: "The judgment does not decide anything more, and does not purport to decide anything more than the fact that Johnson was entitled to the administration on Bradley's estate. That judgment is not an adjudication directly upon the point that the complainant is not the widow of Bradley, and does not purport to decide that question." Contrast this with the language of this court in *Estate of Harrington,* 140 Cal. 244: "This case comes within a very narrow compass, the only point involved being whether the respondent is the widow of the deceased. The lower court held that she was not, and we think that determination was correct."

In *Oldham* v. *McIver,* 49 Tex. 556, a mulatto woman claimed to be the widow of William Oldham, a white man, the laws of the state, civil and penal, prohibiting such marriages. The alleged widow, upon application, had caused to be set apart to her a homestead and the exempted property. The administrator sought to set aside these judgments under proceedings in *certiorari.* While this matter was thus pending, an action was tried touching the right of possession of the homestead property between the widow and certain out-

side claimants, renters of the homestead property, who were in possession thereof. This case went to judgment, the decision being that the renters should retain the homestead and other exempt property during the year 1869, holding it as tenants of Phillis (the alleged widow), and her children, and at the end of the year turn it over to them and pay to them its rental value for the year. "This rental value," says the supreme court of Georgia, "was the only matter submitted to or found in the trial of the case." The proceeding in *certiorari* from the homestead award, coming on to be heard, this judgment was pleaded as a final adjudication of her *status*. The supreme court of Georgia fully recognized the binding force which pertained to a decree awarding a homestead, where the question of the widowhood of the claimant was directly involved and adjudicated, using this language: "Under the law as it existed the county court was authorized to set apart to the widow and children of the deceased, if he had such, the homestead and exempted property. This gave that court the right to ascertain the fact that she was his lawful wife, and that certain of her children were his heirs, and to make the order setting apart the property. That was an adjudication of that fact by a competent court having jurisdiction in the matter as pertaining to the estate of William Oldham, then being administered in said court. *That order conclusively established that fact in any other suit or proceeding in which it was or might be involved or be put in issue, until set aside by appeal or certiorari directly.*" The court then proceeds to show, first, that in the action between Phillis and the renters in possession of the homestead, Phillis obtained judgment—not by a trial upon the question of the merits of her widowhood, but simply by pleading that her widowhood had been adjudicated by the order of the county court, and "upon that alone," says the court, "and not upon the trial or determination of that fact." Therefore, there was not only no adjudication upon the merits, but the very matter of her widowhood was still *sub judice* in the *certiorari* proceedings—a direct attack upon the homestead judgment—which proceedings in *certiorari* resulted in the defeat of Phillis's claim. It will be observed that this Texas case, so far from being a recognition of appellant's contention, distinctly declares the law as to the

effect of a judgment in homestead proceedings to be such as we here hold it to be.

The last case is that of *Bordwell* v. *Saginaw Circuit Judge*, 119 Mich. 421, 48 N. W. 468. The alleged widow applied to the probate court asking for an allowance for her support. The heirs at law contested her claim of widowhood. The probate judge determined she was the widow and made her an allowance. The heirs appealed to the circuit court. The relator moved the circuit court to dismiss the appeal upon the ground that the order was not appealable. Her motion was denied. The proceeding before the supreme court of Michigan was to review the action of the circuit court, or, in other words, it was to determine the single question whether or not, under the laws of Michigan, an appeal lay from the order granting a family allowance to an alleged widow, when the question of her *status* was disputed. The supreme court of Michigan held that its laws permitted no such appeal. This was the beginning and the end of its determination, but, probably because of the fact that so grave a question as the *status* of widowhood should not be finally determined for all time, and in all proceedings, without the right of appeal which is so generally accorded in other states, the supreme court of Michigan, as *obiter* purely, and without discussion or citation of authority, declared that the determination of the probate judge, "that relator is the widow of Mr. Bordwell is conclusive only so far as it relates to the allowances made to her pending the litigation, and is not *res judicata* as to her right as widow to the distributive share of the estate to which the widow is entitled." Under the different laws of this state, where an adjudication of a homestead is a judgment from which an appeal may be taken this *dictum* of the supreme court of Michigan, for reasons already given, cannot be regarded as persuasive.

The decree and order appealed from are therefore affirmed.

McFarland, J., and Lorigan, J., concurred.

Hearing in Bank denied.