(77 Misc. Rep. 309.)

In re ARBUCKLE. In re KELLY, Public Administrator. In re JARVIE.

(Surrogate's Court, Kings County. June, 1912.)

EXECUTORS AND ADMINISTRATORS (§ 18*)—PUBLIC ADMINISTRATOR—RIGHT TO ADMINISTER.

Under Code Civ. Proc. § 2669, providing that the public administrator of Kings county shall be entitled to administer whenever an intestate leaves assets in the county, and there is no widow, husband, or next of kin resident in the state, a sister of an intestate, otherwise competent and willing, though a nonresident at the time of the intestate's death, who has established a residence in such county, which still continues, is entitled to administer.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 60–77; Dec. Dig. § 18.*]

Application of Frank V. Kelly, as Public Administrator, for letters of administration on the estate of John Arbuckle. Christina Arbuckle also applied for letters, and James N. Jarvie, a creditor of decedent, intervened. Letters granted to Christina Arbuckle.

Dykman, Oeland & Kuhn, of Brooklyn (William N. Dykman, of Brooklyn, of counsel), for Christina Arbuckle.

Edward J. Byrne, of Brooklyn, for public administrator.

Joline, Larkin & Rathbone, of New York City, for James N. Jarvie.

KETCHAM, S. Application for administration upon the estate of the decedent is made by the public administrator, upon the ground that at the time of the death there was no "widow, husband, or next of kin entitled to a distributive share in the estate of such intestate. resident in the state, entitled, competent, or willing to take out letters." The only next of kin being two sisters, one of them asks for the issue of letters to herself, upon the ground that, although she was not a resident of the state at the time of her brother's death, she has since established a residence in the county of Kings, which still continues.

The question thus presented is intersected by the representation made in behalf of the next of kin that the personal estate involved

has been wholly administered by a voluntary division between them and that there are no debts of the intestate remaining unpaid. Upon this allegation, it is suggested that formal administration should not be granted, since it would be an idle and onerous mechanism. Alleged creditors intervene, and insist that there should be administration to protect their rights, and show that at the death of the intestate there were pending two actions against him and his partner upon partnership debts.

It is stated in the brief of the next of kin that the estate is of the value of $37,500,000, and that the commissions of an administrator would be more than $375,000. This estimate doubtless includes the real estate, but in any event the amount of commissions would be large enough to insure deliberation in the disposition of this controversy. The claim that administration would be a useless burden to the estate is presented by the next of kin only as an alternative to a denial of the right of one of them to administer. It need not be regarded, therefore, unless the court is moved to refuse letters to the petitioning sister. .

It is practically conceded, and will be found, that this sister has become and now is a resident of the county, and that she was not a resident of the state at the time of the death. Under the general law of this state, next of kin in a prescribed order of preference are entitled to administration, whether resident or nonresident. There is no county in New York, except the county of Kings, where a nonresident, otherwise qualified, is denied administration. By a statute, which has no justification except its own existence, it is provided as follows:

"He [the public administrator] shall have the prior right and authority to collect, take charge of and administer upon the goods, chattels, personal property and debts of persons dying intestate, and for that purpose to maintain suits as such public administrator as any executor or administrator might by law in the following cases: 1. Whenever such person dies leaving any assets or effects in the county of Kings, and there is no widow, husband or next of kin entitled to a distributive share in the estate of such intestate, resident in the state, entitled, competent or willing to take out letters of administration on such estate. 2. Whenever assets or effects of any person dying intestate, after his death, come into the county of Kings and there is no such person entitled, competent or willing to take administration of the estate." Code Civ. Pro. § 2669.

This enactment, whether under it the test of residence be applied to the time of death, the time of application, or the time of the grant of letters, is not only out of tune with the harmony of the law throughout the state, but it is arrayed against the universal traditions of English-speaking peoples, whether such traditions reside in the natural sense of justice or are expressed in statutes. Matter of Campbell, 192 N. Y. 312, 316, 85 N. E. 392, 18 L. R. A. (N. S.) 606. In the Matter of Goddard, 94 N. Y. 544, the question arose, under the statute relative to the public administrator in Kings county, between nonresident next of kin asking for the appointment of a trust company and the public administrator. Chief Judge Ruger, upholding the right of the public administrator to take, said:

"We should have been gratified to have found a way by which a different result might have been arrived at. The equity of allowing persons, entitled to take by distribution the estate of a deceased person, to select the agency by which such distribution should be made, is so manifest that it ought not to be refused to them, except in a case where its impropriety is clear and unmistakable."

The act must, therefore, be construed strictly against the public administrator, and his demand must fail, unless clearly justified by the statutory language. Section 2669 of the Code of Civil Procedure provides that:

"All provisions of law conferring jurisdiction, authority or power on, or otherwise relating to, the office of public administrator of the city of New York and to the office of public administrator in the several counties of the state, so far as applicable, apply to and are conferred on the office hereby created."

Under enactments with respect to the public administrator in the city of New York and the county treasurers of the state, it is contemplated that, after the appointment of a public administrator in New York City or a county treasurer of any county other than New York or Kings, such officer may be superseded in favor of next of kin who, though nonresident at the time of death, has since become resident and shall apply for letters within periods prescribed.

Upon these associated statutes, it is argued by the next of kin that the provisions for the revocation of the letters of the public administrator upon the application of one of the next of kin who may have acquired a residence after the death are made "applicable" to the public administrator of Kings county, and that it must follow, if the petitioning next of kin could by virtue of her present residence unseat the public administrator, she should, of course, be preferred to him upon her present application.

There is no present necessity to find that the statutes cited with respect to revocation of the public administrator's letters are applicable to this county. The application of a statute which "applies" only "so far as it is applicable" is a task which may well be postponed. The statutory fact that in every county except Kings the next of kin may supersede the public administrator by virtue of residence acquired after the intestate's death adds a reason, if any were needed, for great jealousy in behalf of the next of kin, in determining whether he is only to be preferred to the public administrator in case he is a resident of the state at the time of the intestate's death.

In the second subdivision of section 2669 of the Code it is unquestionably provided that the next of kin, in a case where assets come into the county after the intestate's death, shall be entitled to the letters, if a resident at the time when the assets come. Clearly there is here one case in which next of kin, nonresident at the time of death, but resident at the time when administration becomes necessary, are qualified in preference to the public administrator, and the test of such residence must be applied, in the case of post mortem discovery of assets, to the time of appointment.

There is no policy of the law from which any ingenuity could

derive a purpose in these two subdivisions that qualifications for administration should vary according to the merely casual circumstance that, in one case, there were assets at the time of death and in another there were none until afterward. Rather may it be reasoned that the words in the first subdivision, "whenever such person dies leaving assets," etc., were by the legislative mind put in contrast with the language of the second subdivision relative to administration upon assets which come into the county after the death. If read together, the two provisions are as if the language was:

"Whenever a person dies intestate, whether there are assets of his then in the county, or such assets thereafter come to such county, and there is no resident entitled to administration, then, and then only, the public administrator shall take letters."

With or without such paraphrase, there is no reason why the first subdivision must mean what the second subdivision cannot, viz., that the four tests, of residence, title, competency, and willingness, shall be referred to the time of death. There is no language which would compel that construction. It is not said that the time "when there is no widow, etc., resident, etc.," is the time of death. There is nothing in the whole text which is at war with the intent that these four requisites to appointment of the kinsman shall be looked for at the time when he asks to be appointed. Such intent would accord with every instinct and dictate of humanity and declared law.

Several of the essentials to the appointment of the next of kin other than residence may shift between the death of the intestate and the time of the grant of letters. A person primarily entitled may be incompetent at the death, but competent when letters are granted. He may be willing and unwilling on alternate days during the same period. No one will say that the tests of competency and willingness must be unalterably determined as of the time of the intestate's death. What need is there, then, that as to residence there can be no change? Why should not the next of kin oscillate between nonresidence and residence during the period before appointment as freely as he may concededly swing between willingness and unwillingness?

The provision quoted has no meaning in the present tense. It can never have any effect except in its application to future proceedings. Whenever the present tense is used in statutes regulating litigation, it refers to such facts or occurrences as shall be found to be present in the future action or proceeding. The statute involved in this discussion, in its employment of the word "is," nc more relates to the time of the death of the intestate than to the time when the statute was passed. It can receive no significance, unless it be regarded as equivalent to the words "shall be." Indeed, the word "whenever" projects the action and tense of the word "is" into the time to come.

The law would search zealously for a legislative purpose that

the public administrator's right should fail if a resident, otherwise qualified, should present himself before the time for appointment. What is the language in the act under examination which makes such purpose impossible? Indeed, is it not hard to find any word which is inconsistent with such purpose? Had it been intended that the public administrator should take letters, if there was no person eligible among the kin at the time of death, it would have been easy to declare such purpose expressly. To refrain from such expression was, in the face of the general state of the law on the subject, an exclusion of the purpose.

No decision upon the question has been found in this state. In Woerner's American Law of Administration (section 238, star paging 522), it is said:

"It may happen that disqualification existing at the time of the decedent's death is removed before the grant of letters. In such cases letters should be granted to the person entitled to the same at the time of the application therefor, although such person was at the time of intestate's death disqualified."

Dr. Schouler, in his work on Executors and Administrators (section 97), says:

"The fundamental principle of both English and American enactments now in force on this subject is that the right to administer, wherever the deceased chose no executor, shall go according to the beneficial interest in the estate, a principle which may yield, however, to other considerations of sound policy and convenience; and the grant should be according to the preference at the time, not of intestate's death, but of the application."

It is observable that the learned author last quoted, in his recent work combining his volume on Wills with that on Executors and Administrators under the title of "Wills and Administration," has omitted the last clause of the citation with respect to the preference at the time of the application.

Many cases are cited from other states, in which it is held, under varying statutes, that residence, where requisite to the appointment, is residence existing either at the time of the appointment or the application therefor, and that such residence need not have prevailed at the time of the intestate's death. Stevens v. Larwill, 110 Mo. App. 140, 84 S. W. 113; Matter of Succession of White, 45 La. Ann. 632, 12 South. 758; Griffith v. Coleman, 61 Md. 250; Matter of Sprague's Estate, 125 Mich. 357, 84 N. W. 293; Matter of Newman, 124 Cal. 688, 57 Pac. 686, 45 L. R. A. 780. In many of these states the statute interpreted was not necessarily or substantially equivalent to the Code section under examination.

In Stevens v. Larwill, the Missouri case, supra, under a statute entirely negative as to whether or not the residence required for the appointment of an administrator was a residence at the time of the death, the grant of letters to a person who had taken up a domicile for the purpose of qualifying was sustained.

In Matter of Succession of White, the Louisiana statute was:

"In all intestate successions, when there is no surviving husband or wife, or heir present or represented, in the state, the public administrator of the parish shall be appointed by the judge of the proper court to administer the same."

Of this statute the court of last resort says:

"This language obviously refers to the date of appointment as the time at which it is to be determined whether the conditions on which his right depends exist, and if at that time it is made to appear that there is a 'husband or wife or heir, present or represented, in the state,' the application must yield to the preference accorded by the law to such surviving spouse or heir."

It is to be observed that the Louisiana statute quoted supra contains in the word "surviving" as much suggestion that the test is to be applied at the time of death as can be found in the New York statute.

In Griffith v. Coleman, supra, there is nothing contained that aids the present question.

In Matter of Sprague's Estate, supra, the Michigan statute with respect to qualifications of persons successively entitled to administration cannot be distinguished in substance from the New York statute under inquiry. It was there held as follows:

"The statute applies to the situation at the time letters of administration are granted, and not to the situation at the time of the death of deceased."

If the present question were to be determined upon authority, it would be constrained by the decision last cited.

In Matter of Newman, supra, the California court sustained a grant of letters to a person who obtained letters after the death of the intestate, but no question was considered, except the fact and bona fides of the residence. The only provision apparently applicable was that no person was competent or entitled to serve as administrator who was not a bona fide resident of the state.

The conclusion is that the petitioning sister is such a resident as was contemplated by section 2669 of the Code of Civil Procedure, and is entitled to administration.

Decreed accordingly.