[Civ. No. 28575. Second Dist., Div. Four. Aug. 29, 1966.]

SUSAN LESLIE, Plaintiff and Respondent, v. ROBERT LESLIE, Defendant and Appellant.

Robert Leslie, in pro. per., for Defendant and Appellant.

Gerald B. Parent and W. Edmund Parent II for Plaintiff and Respondent.

FILES, P. J.—In this action for annulment of marriage, the trial court gave judgment for plaintiff, declaring that the marriage which the parties entered into on June 9, 1950, was void by reason of an undissolved prior marriage of the defendant. The judgment also awarded custody of the three minor children of the parties to plaintiff and ordered defendant to pay child support, attorney fees, and a psychiatrist's fee.

Although defendant's notice of appeal states that he "appeals from the judgment," the only point he makes is that the evidence is insufficient to support the decision that the 1950 marriage was void. Irrespective of the dissolution of the marriage it was proper for the court to make its order awarding custody of the children to the mother and providing for their support. (Civ. Code, § 199.) Those portions of the judgment require no further discussion, and we confine our opinion to the subject of the annulment.

Findings of fact were waived in the trial court and thus we are left without any guide to the reasoning process of the trial court other than the judgment itself. Since all

intendments favor the judgment, it follows that if the trial court could have inferred from the evidence any combination of facts which would support the judgment, this appellate court must affirm. (*Stewart* v. *Langer*, 9 Cal.App.2d 60 [48 P.2d 758]; 3 Witkin, Cal. Procedure (1954) Appeal, § 79, p. 2238.) ▇ Our conclusion is that the evidence is insufficient for an annulment of this marriage.

It is undisputed that plaintiff (Susan) and defendant (Robert) went through a regular ceremony of marriage in Jacksonville, Florida, on June 9, 1950. Their marriage certificate is in evidence.

The evidence most favorable to the judgment is this: Robert testified that he married Regina in 1937, and on May 9, 1950, he commenced a divorce action against her in Dade County, Florida. The bill of complaint in that case, a copy of which was received in evidence, was verified by Robert. It alleged that Regina was ''a resident of some state or country other than the State of Florida,'' that he had ''made diligent search and inquiry to discover the true name and residence'' of Regina, and that her residence was 6123 Chestnut Street, Philadelphia, Pennsylvania. The date of separation was alleged to be September 8, 1949. Also in evidence was a non-military affidavit, executed by Robert, stating ''that he knows of his own knowledge that the defendant in the above entitled cause, REGINA STOGER LESLIE, is engaged in private employment and is not serving in the armed forces. . . .''

It appears from other documents in evidence that summons in the Florida action was published and a copy mailed to Regina in Philadelphia. On June 12, 1950, Regina not having answered, the clerk entered an order that the bill be taken as confessed. A letter written by Robert's Florida attorney, which was received in evidence without objection, explains that after the decree *pro confesso* is entered the plaintiff is required to appear with witnesses and prove his case before a judgment may be entered. A postcard from the clerk of the Dade County court, also in evidence without objection, states that as of November 18, 1963, no final judgment had been entered.

Susan testified that she met Regina ''just before'' the 1950 marriage.

Robert also testified that he had not seen Regina for several years prior to his 1950 marriage, but this testimony was impeached by his sworn statements in the divorce papers and could properly have been disregarded by the trial court. ▇ ''It is well established that when a person has entered into

two successive marriages, a presumption arises in favor of the validity of the second marriage, and the burden is upon the party attacking the validity of the second marriage to prove that the first marriage had not been dissolved by the death of a spouse or by divorce or had not been annulled at the time of the second marriage.'' (*Estate of Smith*, 33 Cal.2d 279, 281 [201 P.2d 539].)

The classic explanation for the rule is found in *Hunter* v. *Hunter*, 111 Cal. 261, 267 [43 P. 756, 52 Am.St.Rep. 180, 31 L.R.A. 411], where the court said: ''It is presumed that a person is innocent of crime or wrong. (Code Civ. Proc., § 1963.) There is also a presumption and a very strong one, in favor of the legality of a marriage regularly solemnized. Rather than hold a second marriage invalid and that the parties have committed a crime or been guilty of immorality, the courts have often indulged in the presumption of death in less than seven years, or, where the absent party was shown to be alive, have allowed a presumption that the absent party has procured a divorce. A more correct statement perhaps would be that the burden is cast upon the party asserting guilt or immorality to prove the negative—that the first marriage had not ended before the second marriage.''

 This presumption may be overcome by competent evidence that at the time of the second marriage both parties to the first were alive and that neither had obtained a dissolution by judicial decree. (*Estate of Smith, supra.*) But the presumption that there was a divorce is not overcome by proof that one spouse knows nothing about it. (*Marsh* v. *Marsh,* 79 Cal.App. 560, 567 [250 P. 411].) Even where the parties to the first marriage went through a divorce proceeding which is proved to have been void or incomplete, the second marriage may still be saved upon the presumption that some other divorce or annulment proceeding took place. (*In re Pusey,* 173 Cal. 141 [159 P. 433]; *Hamburgh* v. *Hys,* 22 Cal. App.2d 508 [71 P.2d 301].) Furthermore, the good faith of the common spouse in entering into the second marriage is not a material element. The presumption is available regardless. (*Wilcox* v. *Wilcox,* 171 Cal. 770, 776 [155 P. 95].)

A different situation was presented in *Bancroft* v. *Bancroft,* 9 Cal.App.2d 464 [50 P.2d 465], where the first wife was attacking her husband's second marriage and both parties were before the court. It was there held that the husband could not remain silent and invoke the presumption that he

had obtained a divorce before entering into a second marriage. The husband's failure to produce evidence of a matter within his knowledge served to overcome the presumption.

Examining the evidence in the case at bench, we find a conspicuous hiatus: There is no showing as to where Regina was or what she was doing between September 8, 1949, and May 9, 1950, when Robert's affidavit placed her in Philadelphia. This period was long enough for her to have obtained a judicial termination of the marriage in some jurisdiction. Plaintiff here has failed to carry the burden of proving that defendant was not free to marry on June 9, 1950.

We do not overlook the change in the law of bigamy which has taken place since the presumption was explained in the *Hunter* case (111 Cal. 261 [43 P. 756, 52 Am.St.Rep. 180, 31 L.R.A. 411]). In *People* v. *Vogel,* 46 Cal.2d 798 [299 P.2d 850], the Supreme Court decided that good faith was a defense in a prosecution for the crime of bigamy under Penal Code section 281, expressly overruling *People* v. *Hartman,* 130 Cal. 487 [62 P. 823]. The *Vogel* opinion establishes that it is neither illegal nor immoral for one to contract a second marriage in the honest though mistaken belief that he is free to do so. A void second marriage may nevertheless be innocent. Is there now any basis for equating the presumption of innocence with a presumption that a second marriage is valid?

Our conclusion is that the burden-of-proof rule does not rest solely upon the reluctance of courts to assume that a person is guilty of bigamy. Equally important is the policy of preserving the husband-and-wife status of the parties to the most recent marriage unless and until its invalidity is proven. The *Vogel* case does not require a change in the long-established burden of proof in civil cases.

Insofar as the judgment annuls the marriage it is reversed and remanded to the superior court. In all other respects it is affirmed.

Jefferson, J., and Kingsley, J., concurred.