[Civ. No. 35299. Second Dist., Div. Four. May 8, 1970.]

Estate of WILLIAM VINCENT LeMONT, Deceased.
MAURINE LEAMON LeMONT, Petitioner and Respondent, v.
JAMES PRESTON LEAMON, Claimant and Appellant;
BALDO M. KRISTOVICH, as Public Administrator, etc., Respondent.

COUNSEL

Sid Mannheim for Claimant and Appellant.

George R. Maury and Kenneth E. Lynch for Petitioner and Respondent.

No appearance for Respondent.

## OPINION

**KINGSLEY, Acting P. J.**—This is a dispute between the brother of decedent (James) and a woman (Maurine) claiming as his surviving spouse. The trial court made an order finding that Maurine was the surviving widow of decedent, entitled to a family allowance and granting her letters of administration. The brother has appealed;[1] we reverse the order.

Decedent was Maurine's second husband; no issue is made here as to the

---

[1]Since neither James nor Maurine appeared until some time after William's death, the public administrator was appointed as administrator. The brother has not, so far as the record before us shows, claimed his priority right to letters. The order appealed from revokes the letters to the public administrator and appoints Maurine. Although named as respondent, the public administrator has not filed a brief in this court. We treat the proceedings as implying a waiver by appellant of any priority over the public administrator.

validity of that marriage. They separated and in 1958 he wrote to her saying that he was moving to California; she never heard from him thereafter during his lifetime. Inquiries made in California in 1963 were unavailing and, believing him to be dead, she contracted a third (Mexican) marriage in 1964 to Merle Jones. After decedent's death in 1968, Maurine learned of his continued existence and, in 1969, secured an annulment of her third marriage.

The record before us tells us no more about decedent than that Maurine had not heard from him after 1958 and that he died, in California, in 1968. The record of the annulment action in 1969 is also not before us and was not before the trial court. Under these circumstances, it is argued that, under the doctrines lately discussed by this court in *Leslie* v. *Leslie* (1966) 244 Cal.App.2d 516 [53 Cal.Rptr. 402], there was, and is, a presumption that the marriage between Maurine and decedent had been dissolved prior to 1963 and that any finding to the contrary in the annulment action is not binding on appellant, under section 86 of the Civil Code.[2]

But that argument has no bearing on the case before us. The case at bench is controlled by subdivision 2 of section 61 of the Civil Code—the so-called "Enoch Arden" statute—as that section stood at the times herein involved.[3] That statute provided: "A subsequent marriage contracted by any person during the life of a former husband or wife of such person, with any person other than such former husband or wife, is illegal and void from the beginning, unless:

"    .    .    .    .    .    .    .    .    .    .    .    .

"2. Unless such former husband or wife is absent, and not known to such person to be living for the space of five successive years immediately preceding such subequent marriage, or is generally reputed or believed by such person to be dead at the time such subsequent marriage was contracted. In either of which cases the subsequent marriage is valid until its nullity is adjudged by a competent tribunal."

The facts of this case fall squarely within the rule laid down in *Estate of Harrington* (1903) 140 Cal. 244 [73 P. 1000]. There, as here, the claimant had remarried after five years' absence by the decedent and in the belief that he was dead; there, as here, she had not obtained an annulment of the last marriage prior to decedent's death. The court pointed out that the claimant's status must be determined as of the date of death, that, *as of that date*, the last marriage was still valid and that it could become invalid only as of the date of an annulment decree—necessarily at a

[2]Now Civil Code section 4451.
[3]Now Civil Code section 4401.

time after her status in relation to the estate had been fixed. The fact that the claimant in *Harrington* had never secured an annulment and that Maurine has done so, is a difference that is not here material. Only if Maurine had secured her annulment while decedent was still alive, could she contend that her marriage to him—suspended in all legal effect during her later marriage[4]—had become revived so as to give her a widow's status.

The effect of the Enoch Arden statute is to make an express statutory exception to the general rule that an annulment of marriage is retroactive.[5] It is true that, as Chief Justice Beatty unsuccessfully argued in urging a reconsideration in *Harrington,* a widow in the situation of the claimant there, and here, is economically worse off than was the widow in *Estate of Newman* (1899) 124 Cal. 688 [57 P. 686], where a woman who had contracted an admittedly void and bigamous later marriage was allowed to claim as surviving widow in her first—and only valid—husband's estate. (*Estate of Harrington* (1903) 140 Cal. 294 [73 P. 1131, 74 P. 136].) But that is the price which society imposes for the exception to the common law rule that a second marriage while the first spouse was living and undivorced was totally void. Since we do not countenance a woman having two husbands concurrently, it follows that she cannot, at the moment of death, be both widow and wife.

The order is reversed.

Dunn, J., and Irwin, J.,* concurred.

A petition for a rehearing was denied May 27, 1970, and appellant's petition for a hearing by the Supreme Court was denied July 1, 1970.

---

[4]For example, under an identical New York statute, it was held that the former spouse could not claim adultery for the relationship with the later (Enoch Arden) husband prior to the annulment of the later marriage. (*Valleau* v. *Valleau* (1836) 6 Paige (N.Y.) 207; *Oram* v. *Oram* (1877) 3 Redf. (N.Y.) 300.)

[5]We point out that, in recent years, other and judicially created exceptions to the common law rule of retroactivity have been recognized, so that the Enoch Arden statute is no longer as unusal in its effect as it was when first enacted. (See, for example: *Sefton* v. *Sefton* (1955) 45 Cal.2d 872 [291 P.2d 439].)

*Retired judge of the superior court sitting under assignment by the Acting Chairman of the Judicial Council.