|111    261|
|112    687|

.111    261
|f130     7

111    261
s133    604

|111    261|
|144    701|

[No. 19555.  In Bank.—February 15, 1896.]

## JESSE HUNTER, APPELLANT, v. JANE ELIZABETH HUNTER, OR MILAM, RESPONDENT.

ANNULMENT OF MARRIAGE—PREVIOUS MARRIAGE OF DEFENDANT—PRE-
SUMPTIONS — CONTINUANCE OF LIFE—INNOCENCE—LEGALITY OF MAR-
RIAGE—DIVORCE—BURDEN OF PROOF.—In an action to annul a marriage
on the ground of the previous marriage of the woman to another hus-
band, who has not been heard of for four and a half years at the time
of the second marriage, in the absence of proof that the first husband
was then living, or had not been divorced from the defendant, the pre-
sumption in favor of the innocence of the defendant from crime or
wrong and of the legality of the second marriage will prevail over the
presumption of continuance of life of the first husband; and the bur-
den is cast upon the party asserting her guilt or immorality to prove
that the first marriage was not ended by death or divorce before the
second marriage.

ID.—SUBSEQUENT DIVORCE OF DEFENDANT FROM FIRST HUSBAND—CONCLU-
SIVENESS OF DECREE—STATUS OF DEFENDANT.—A decree in an action
for a divorce brought by the defendant from her first husband, after
having lived twenty-two years with her second husband, in which ac-
tion the summons was served by publication, is only conclusive that
the status of the defendant was no longer that of the wife of the first
husband, and is not conclusive as an adjudication that the former hus-
band was then alive, nor that she was his wife when she married the
plaintiff.

ID.—AFFIDAVITS OF DEFENDANT—EVIDENCE—ESTOPPEL.—Affidavits made
by the defendant in her proceedings for divorce, and in a subsequent
action brought by her to annul the first marriage, which was dismissed,
stating upon the strength of rumors heard by her that her first husband
was then living, and that he was living at the time of her second mar-
riage, and that she had not then been divorced from him, though strong
evidence against her, do not create an estoppel, nor preclude the court
from finding that there was no authentic information that the first hus-
band was alive at the time of the second marriage, upon explanatory
evidence satisfying the court of that fact.

ID.—APPEAL FROM JUDGMENT—DISMISSAL—REVIEW OF ALIMONY.—Where
an appeal from a judgment refusing to annul the marriage of plaintiff
with defendant, was taken too late, it must be dismissed; and in such
case, objection to the allowance of alimony to the defendant can not be
considered.

APPEAL from a judgment of the Superior Court of
Los Angeles County and from an order denying a new
trial.   J. W. McKINLEY, Judge.

The facts are stated in the opinion of the court.

*Knight, Simpson & Harpham,* for Appellants.

The status of marriage being proved it is presumed
to continue until death or divorce, in the absence of
proof to the contrary. (*People* v. *Stokes,* 71 Cal. 266–7.)
The defendant cannot impeach the judgment of divorce
obtained by her against Milam which adjudicated that
he was then alive. (*Elliott* v. *Wohlfrom,* 55 Cal. 384;
*Roth* v. *Roth,* 104 Ill. 35; *Yaple* v. *Titus,* 41 Pa. St. 195;
80 Am. Dec. 604; *Knott* v. *Taylor,* 99 N. C. 511; 6 Am.
St. Rep. 547; *Mitchell* v. *Schoonover,* 16 Or. 211; 8 Am.
St. Rep. 282; *Mills* v. *Alexander,* 21 Tex. 159; *Thouvenin*
v. *Rodrigues,* 24 Tex. 468; *Gould* v. *Crow,* 57 Mo. 200.)
The court could not allow counsel fees to the defend-
ant as alimony in an action to annul a marriage, and
the conclusion of law that defendant should have judg-
ment for counsel fees is a decision against law and a
new trial should be granted therefor. (*Heinlen* v. *Heil-
bron,* 71 Cal. 564; *Simmons* v. *Hamilton,* 56 Cal. 496;
*Lothian* v. *Wood,* 55 Cal. 164.)

*S. A. W. Carver,* for Respondents.

The appeal from the judgment was too late, and
should be dismissed; and the question of alimony can-
not be considered on motion for new trial. It is to be
presumed that the first husband died prior to the sec-
ond marriage. (*Johnson* v. *Johnson,* 114 Ill. 616; 55
Am. Rep. 883; 1 Bishop on Marriage and Divorce, secs.
452–56.) The presumption in favor of innocence and
the legality of the marriage between plaintiff and defend-

ant should prevail; and the burden is with the party objecting to its validity to prove that it is not valid. (1 Bishop on Marriage and Divorce, secs. 457, 458, 949–54; *Rex* v. *Twyning*, 2 Barn. & Ald. 386; *Yates* v. *Houston*, 3 Tex. 449; *Dixon* v. *People*, 18 Mich. 84; *Senser* v. *Bower*, 1 Pa. 450; *Hull* v. *Rawls*, 27 Miss. 471; *Chapman* v. *Cooper*, 5 Rich. 452; *Boulden* v. *McIntire*, 119 Ind. 574; 12 Am. St. Rep. 453; *Le Brun* v. *Le Brun*, 55 Md. 496; *Carroll* v. *Carroll*, 20 Tex. 731; *Lockhart* v. *White*, 18 Tex. 102; *The King* v. *Inhabitants*, 2 Barn. & Ald. 386.) The declarations of the defendant are not ground for the annulment of her marriage with plaintiff, and are not conclusive that she had another husband living at the time. (*Le Brun* v. *Le Brun*, *supra*; *Gainer* v. *Relf*, 12 How. 472, 534; *Montgomery* v. *Montgomery*, 3 Barb. Ch. 132; *Clayton* v. *Wardell*, 5 Barb. 214; *Jones* v. *Jones*, 48 Md. 391; 30 Am. Rep. 466; *Cope* v. *Cope*, 5 Car. & P. 604; *Myatt* v. *Myatt*, 44 Ill. 473; note to *Richardson* v. *Richardson*, 30 Am. Dec. 544.) The decree of divorce from Milam was not *res adjudicata* that the defendant was not the lawful wife of plaintiff. (*Williams* v. *Williams*, 63 Wis. 58; *Boulden* v. *McIntire*, *supra*.) Cohabitation between plaintiff and defendant having continued after the decree of divorce was obtained, and any possible impediment being thus removed, the relation grew into one of true and valid marriage. (1 Bishop on Marriage and Divorce, secs. 345, 955, 961, 970, 975; *Blanchard* v. *Lambert*, 43 Iowa, 228; 22 Am. Rep. 245; *State* v. *Worthingham*, 23 Minn. 528, 536; *Cole* v. *Cole*, 5 Sneed, 57; 70 Am. Dec. 275; *Fenton* v. *Reed*, 4 Johns. 52; 4 Am. Dec. 244; *Rose* v. *Clark*, 8 Paige, 574; *Donnelly* v. *Donnelly*, 8 B. Mon. (Ky.) 113; *Teter* v. *Teter*, 88 Ind. 494; *Smith* v. *Smith*, 1 Tex. 621, 632, 633; 46 Am. Dec. 121; *Yates* v. *Houston*, *supra*; *Lee* v. *Smith*, 18 Tex. 145.)

TEMPLE, J.—The action was brought to annul a marriage between the parties entered into on the third day of July, 1862, upon the ground that defendant had another husband to wit, Joseph Milam.

It is now conceded that defendant was married to Joseph Milam in February, 1858, when defendant was but fifteen years of age; that she lived with Milam as his wife for ten days, when she was taken away by her parents and went to Salt Lake. It does not appear how long she was absent from San Bernardino, but it could not have been a very long time, for she testified that she lived at San Bernardino after her marriage to Milam about four and one-half years, when she married plaintiff. Only about that period elapsed between her first and second marriage. She testified that Milam left a few days after her marriage to him and she had heard nothing of him since. Plaintiff and defendant lived together as husband and wife at Los Angeles for about twenty-two years, when, as defendant testified, she was told by her nephew, who lived in Arizona, that he had met a brother of Joseph Milam who said Joseph Milam was living at Walla Walla. This is all she has ever heard in regard to Milam since he left San Bernardino. She then commenced an action against Joseph Milam to secure a divorce. In her verified complaint, filed December 21, 1883, she describes herself as Jane Elizabeth Milam, and states that plaintiff and defendant were married in February, 1858, and ever since have been and now are husband and wife, and that defendant resides out of the state of California.

On the same day she made and presented to the court her affidavit, to procure the publication of summons, in which she stated that defendant resides out of the state, that his last residence within the state was in Pajaro, in Santa Cruz county, that through knowledge derived from his brother she believes he resides at Walla Walla in Washington territory.

Such proceedings were had in the action that on the twenty-ninth day of March, 1894, a decree was entered dissolving the marriage between Joseph Milam and the defendant plaintiff in that action.

Certain findings were also filed, and purport to constitute part of the judgment-roll; but, as there were no

issues to try and judgment was entered on default, ex-
press findings were unauthorized and add nothing to
the necessary adjudication.

Subsequently defendant commenced an action against
the plaintiff to have her marriage with him declared
void on the same ground on which plaintiff now seeks
relief, to wit: That at the time of her marriage with him
her first husband, Joseph Milam, was living and she
had not been divorced from him. The complaint in
that suit was also verified. The action was finally dis-
missed by her before it came to judgment.

Two of plaintiff's brothers testified that, at the time
the parties to this action were married, they heard trav-
elers say the man defendant married was still living
*there* (San Bernardino). It is, however, pretty certain
that he was not then living at San Bernardino. This
is all the evidence contained in the record upon this
subject.

It is contended: 1. That the judgment in the divorce
suit is conclusive upon defendant that she was divorced
from Milam. That is, that Milam was then alive, and
that until the decree was entered she was his wife.

But this adjudication as such did not bind Milam.
He was not served with summons and was without the
state, and the action was therefore strictly *in rem.* "No
sovereignty," says Story on Conflict of Laws, section 539,
" can extend its process beyond its own territorial limits
to subject either persons or property to its judicial de-
cisions." The *res* before the court was the *status* of the
plaintiff in the divorce suit. No service of summons
being had it was not an action *inter partes*, but a pro-
ceeding affecting only the *status* of the wife. "It did
not establish but recognized and presupposed the rela-
tion of husband and wife as previously existing." (*Bur-
len* v. *Shannon*, 3 Gray, 387.) It was conclusive against
all the world that the plaintiff in that suit was no longer
the wife of Joseph Milam, and it was an adjudication of
nothing else. No one would claim that Milam would
be estopped by the decree to deny that he had ever been

married to defendant, or had he remarried and had
children that the decree would be evidence of their
bastardy. Milam may have been previously divorced,
and in such case there would be two valid decrees,
which, on the theory that they constituted an adjudica-
tion of marriage at the time of the divorce, conclusive
against the world, would contradict each other and yet
both be binding on all the world. (See on this point *Gill*
v. *Read*, 5 R. I. 343; 73 Am. Dec. 73; *Gourand* v. *Gour-
and*, 3 Redf. 262; Freeman on Judgments, 154.)

But since the court had jurisdiction to declare the
*status* of Mrs. Milam as affected by an assumed marriage
with Joseph Milam, and did adjudge that she was no
longer the wife of Joseph Milam, it would follow that he
could no longer be her husband. He was thus affected
by the judgment as he would have been by the death of
his wife, and this resulted simply from the fact that the
*status* of his wife was changed. So far and no farther,
the judgment bound him and all the world.

That being so, it must follow that as an adjudication
it bound her no further. Had she borne children to
Hunter the judgment would have estopped neither such
children nor her to deny that she was the wife of Milam
when she married Hunter.

It is further contended that her affidavits are conclu-
sive evidence against her. Three times she stated
under oath that she was the wife of Milam when she
was married to Hunter. This is very strong testimony
against her, but is only strong evidence. It is not an
estoppel. She went upon the stand as a witness for
herself, and explained that she made those affidavits
upon the strength of a rumor she heard. This was all
she had heard. The court found in her favor, and must
have believed her statement. The statements made by
plaintiff's brother do not show that Milam had been
heard from, and if defendant's testimony was true such
statements must have been unfounded. The court
could well find that there was no authentic information
to the effect that Milam was alive.

But it is said the marriage of the parties to this suit took place only about four and one-half years after the marriage to Milam, and it will be presumed that Milam was alive, in the absence of proof to the contrary. There was no proof tending to show that Milam was dead, or that his chance for life was below the average; therefore it is contended the court should have found that he was alive.

This presumption of the continuation of life is, how-ever, overcome by another. It is presumed that a per-son is innocent of crime or wrong. (Code Civ. Proc., sec. 1963.) There is also a presumption, and a very strong one, in favor of the legality of a marriage reg-ularly solemnized. Rather than hold a second marriage invalid and that the parties have committed a crime or been guilty of immorality, the courts have often indulged in the presumption of death in less than seven years, or, where the absent party was shown to be alive, have allowed a presumption that the absent party has procured a divorce. A more correct statement per-haps would be that the burden is cast upon the party asserting guilt or immorality to prove the negative— that the first marriage had not ended before the second marriage. A few cases will best illustrate the rule. In *Rex* v. *Twyning*, 2 Barn. & Ald. 386, was a question as to a settlement, which depended upon the validity of a second marriage of Mary Burns. She was a pauper and married about twelve months after her husband had enlisted as a soldier in foreign service. The second marriage was held good. The court said: "The law presumes the continuation of life, but it also presumes against the commission of crimes, and that even in civil cases, until the contrary is proved." This was the ques-tion in *Rex* v. *Harborne*, 2 Ad. & E., 540. It was said that there was no absolute presumption, but that it was a question for the jury to determine under the circum-stances of the case, and a verdict convicting a defendant of bigamy was upheld on proof that the husband was alive twenty-five days before the second marriage. (See

also, *Rex* v. *Lumley*, L. R. 1. C. C. 196.)   *Murray* v. *Murray*, 6 Or. 1, involved the legitimacy of the children of a second marriage.   It was held that the presumption of innocence should be preferred, but the presumption was not absolute and the question would depend upon the special circumstances of the case.   In *Lockhart* v. *White*, 18 Tex. 102, Mrs. Waggoner had been separated from her husband about five years.   One witness had heard of him since the separation.   The court said: "There is no evidence that Waggoner had been heard of within twelve months (though that exact time is not necessary to raise a favorable presumption) prior to the marriage with Allsbrooks, and under the rule established in the above case the continuance of the life of Waggoner will not be presumed.   The second marriage was consequently lawful and valid."   It was also said that the presumption of the continuance of life was weaker and must yield to the presumption of innocence. *Sharp* v. *Johnson*, 22 Ark. 79, was a case involving a question of heirship depending upon legitimacy.   This depended upon the validity of a marriage.   The court refused an instruction to the effect that the former wife, if alive within five years before the last marriage, was presumed to be still alive.   The ruling was affirmed, and the court quoted from Mathews on Presumptive Evidence: "A charge of an act of immorality, or of disobedience of a positive law, will not be received unless supported by direct evidence.   Circumstances showing probability merely are not enough; the fact averred must be conclusively proved."

*Klein* v. *Laudman,* 29 Mo. 259, was an action of slander, and a similar ruling was made.   *Spears* v. *Burton,* 31 Miss. 547, involved the question of legitimacy, and it was held that the presumption of continuancy of life would not establish a crime, even in a civil case.

To the same effect is *Greensborough* v. *Underhill,* 12 Vt. 604.   The question in that case was as to settlement. *Schmisseur* v. *Beatrie,* 147 Ill. 210, was a case involving the question of legitimacy.   It was proven that an ab-

sent husband was alive at the time of the marriage, and the court held that in favor of this second marriage it would presume that the absent party had obtained a divorce, and that the burden of proving that such divorce had not been obtained was on the party alleging the invalidity of the second.

It is said that a contrary doctrine is established in *People* v. *Stokes*, 71 Cal. 263. This precise point was not there discussed, although it was raised. The court contented itself with asserting the general proposition, which no one disputes, that the presumption of life continues for seven years. The fact that there were conflicting presumptions must have escaped the attention of the court, otherwise the case is in conflict with all the cases upon the subject and with all the text-books. We cannot hold that this long line of decisions, in which there is no break, has been overruled by a case in which the point was not discussed.

The court found for the defendant upon all points, notwithstanding the fact that owing to her former statements under oath her testimony was justly subject to grave suspicion. If her explanation of the former affidavits was true I think it sufficient. We cannot reverse the judgment for insufficiency of the evidence.

As the appeal from the judgment was taken too late we cannot consider the objections to the allowance of alimony. A new trial is a re-examination of an issue of fact in the same court after a trial. The allowance of alimony is an incident to an action for a divorce, and, although the determination as to its allowance may involve a controversy as to facts, such determination is not the trial of an issue in the case. It may be before or after trial.

The appeal from the judgment is dismissed, and the order denying a new trial is affirmed.

McFARLAND, J., VAN FLEET, J., HARRISON, J., GAROUTTE, J., and HENSHAW, J., concurred.