[Civ. No. 11230.  First Appellate District, Division Two.—November 14, 1939.]

In the Matter of the Estate of GEORGE E. BORNEMAN, Deceased.  DELIA STEWART, Administratrix, etc., Respondent, v. MARGARET BORNEMAN, Appellant.

I. F. Chapman and Tom Chapman for Appellant.

Willard Lee Pope for Respondent.

STURTEVANT, J.—On August 4, 1938, in San Francisco, a man died leaving an olographic will in words and figures as follows:

"San Francisco January 3, 1938.

"I George Stewart want my wife Delia Stewart to have everything I own including the money in the San Francisco Bank.

"GEORGE STEWART".

On August 31, 1938, Delia Stewart filed a petition asking that the will be admitted to probate and that, as surviving wife of the decedent, she be appointed administratrix. On September 27, 1938, Margaret Borneman filed a petition in which she alleged the true name of the decedent was George E. Borneman and that she was his surviving wife. She asked that the will be admitted to probate and that letters of administration with the will annexed be issued to her. Notice of the hearing of each petition was duly given and both came on for a hearing on the same date. Later the trial court made an order granting the petition first mentioned and denying the second. From that order Margaret Borneman has appealed under the alternative method.

Before making the order appealed from the trial court made findings, among others: "(4) That the petitioner Delia Stewart married the decedent at San Jose, California, on or about May 21, 1919; that at the date of said marriage the decedent was not married to the petitioner, Margaret Borneman; (5) That the petitioner Delia Stewart is the surviving wife of the decedent; . . . (6) That the petitioner Margaret Borneman is not the surviving wife of said decedent." The appellant attacks each of those findings.

In addition to the facts recited above the transcript discloses that at San Francisco in 1895 George E. Borneman and Maggie E. Neary were married. Although this petitioner Margaret Borneman did not so testify we will assume for the purposes of this decision that she was formerly Maggie E. Neary. In 1912, while the Bornemans were at Portland, Oregon, Mr. Borneman left the petitioner and went to live with a Miss Stewart. In 1914 he left Portland and came to San Francisco. In 1915 Mrs. Borneman and her two sons came to San Francisco. Mrs. Borneman did not testify that after the separation in 1912 she ever saw her

husband or that any communications passed between them. She testified her sons saw and spoke to him, but she gave no dates. One son did not appear as a witness. The other son did. He testified he saw the decedent in 1922. He did not claim he ever saw him or communicated with him at any other time between 1912 and 1922. There is not a word in the record to the effect that from 1912 until 1937 the decedent knew that petitioner, Margaret Borneman, was alive, and if she were living where she resided. On May 21, 1919, at San Jose, the decedent applied to the county clerk for a license to marry Delia Johnson. In his written application he stated his name was George E. Stewart, that he had been married, and that he was "widowed". The license was issued and the decedent and Delia Johnson, the other petitioner, were duly married and thereafter lived together as man and wife down to the date of his death. On the trial Mrs. Borneman produced a photograph which she testified Mr. Borneman gave her many years before. She testified it was a photograph of him. Mrs. Stewart testified it was a photograph of Mr. Stewart.

█ Mrs. Borneman attacks the findings hereinabove set forth and claims that the marriage of Mr. and Mrs. Stewart was invalid and void. We think that claim may not be sustained. Section 61 of the Civil Code provides: "A subsequent marriage contracted by any person during the life of a former husband or wife of such person, with any person other than such former husband or wife, is illegal and void from the beginning, unless: . . . 2. Unless such former husband or wife is *absent,* and not *known* to such person to be living for the space of five successive years immediately preceding such subsequent marriage, or is generally reputed or *believed* by such person to be dead at the time such subsequent marriage was contracted. In either of which cases the subsequent marriage is valid until its nullity is adjudged by a competent tribunal." (Emphasis ours.) The marriage dated May 21, 1919 having been duly proved, the presumption of its validity is very strong. (*Wilcox* v. *Wilcox,* 171 Cal. 770, 774 [155 Pac. 95].) In *Hunter* v. *Hunter,* 111 Cal. 261, at page 267 [43 Pac. 756, 52 Am. St. Rep. 180, 31 L. R. A. 411], the court said: "Rather than hold a second marriage invalid and that the parties have committed a crime or been guilty of immorality, the courts have often

indulged in the presumption of death in less than seven years, or, where the absent party was shown to be alive, have allowed a presumption that the absent party has procured a divorce. A more correct statement perhaps would be that the burden is cast upon the party asserting guilt or immorality to prove the negative—that the first marriage had not ended before the second marriage.'' That rule has been repeated and followed in many cases. (26 Cal. Law Review, 270 and cases cited.) Mrs. Borneman says, in effect, that Mr. Borneman *left* her at Portland and that he, and not she, was the ''absent'' one and therefore section 61 of the Civil Code has no application. That statement rests solely on her testimony that Mr. Borneman *left* her. But the trial court was not bound to believe her testimony. (*Davis* v. *Judson,* 159 Cal. 121, 128 [113 Pac. 147].) A consideration of the facts hereinabove set forth leads one to agree with the trial court's intimations that Mrs. Borneman did not testify truly. Therefore the second marriage under the facts of this case was valid. The record does not directly show what Mr. Stewart (Mr. Borneman) *knew* about the continuation of the life of his first wife on May 21, 1919. His statement to the county clerk, when applying for a license to marry Delia Johnson, that he was ''widowed'' is some evidence of what he *believed.* Therefore the trial court was authorized in presuming that on said date the applicant *believed* his first wife was dead.

But the holding of the trial court was not erroneous if it be assumed that section 61 of the Civil Code was not applicable. Under the common law a subsequent marriage contracted by any person during the life of a former husband or wife of such person other than such husband or wife is illegal and void from the beginning unless the former marriage has been annulled or dissolved. But, at common law, the rule stated in the Hunter case obtained. (*Rex* v. *Twyning,* 106 Reprint, 407.) Viewing this case under the rules of the common law the same result must be reached.

In 38 Cal. Jur. 1328, the author says: ''In the case of conflicting marriages of the same spouse, the presumption of validity operates in favor of the second marriage. Accordingly the burden of showing the validity of the first marriage is on the party asserting it, and even where this is

established it may be presumed in favor of the second marriage that at the time thereof the first marriage had been dissolved either by a decree of divorce or by the death of the former spouse, so as to cast the burden of adducing evidence to the contrary on the party attacking the second marriage.'' ■ For the purpose of showing that her marriage to George Borneman had not been dissolved or annulled, Mrs. Borneman testified she had never commenced an action to obtain that relief and that she had never been served with papers in such an action commenced by her husband. She also introduced evidence that the records in San Francisco contained no record of such an action. But there was no evidence showing the residence of Mr. Borneman or of Mr. Stewart from the year 1912 down to 1938 except the mere fact that Mr. Stewart resided in San Francisco at the time of his death. That proof was insufficient to rebut the presumption of innocence. (*Everett* v. *Standard Acc. Ins. Co.*, 45 Cal. App. 332, 336 [187 Pac. 996]; *Marsh* v. *Marsh,* 79 Cal. App. 560, 567 [250 Pac. 411].) The burden rested on Mrs. Borneman to introduce such evidence as would convince the mind of the trial court that the first marriage had not been dissolved. (*Estate of Chandler,* 113 Cal. App. 630, 636 [299 Pac. 110].) This apparently she did not do. The most she did was to create a conflict in the evidence but a mere conflict in the evidence will not warrant a reversal. It follows that whether the case is measured by the rules at common law or by the terms of the statute Mrs. Borneman did not sustain the allegations of her pleadings.

■ In all we have said above we have acted on the assumption that Borneman and Stewart were one and the same individual. That assumption is far from being clear. It is directly controverted by the statements made by Stewart in his application to marry Delia Johnson. Borneman was in San Francisco in 1895 when he married Maggie E. Neary. No disinterested witness was called to testify Borneman was later known as Stewart. Mrs. Borneman did not claim she ever saw her husband after they separated at Portland. She testified that when he arrived in San Francisco he called on her sister. But that sister was not called as a witness. She testified her sons saw her husband. But one of the sons she did not call. She would

have the trial court understand that her husband, herself, and both sons lived in San Francisco from 1915 to 1938, but during that time she made no claim she was the wife of the decedent nor entitled to support from him. Nor is there any evidence she commenced an action, as she had a right to do, to have the second marriage annulled. (Civ. Code, sec. 83, subd. 2.) Not until one year prior to the death of the decedent did one of her sons learn of the fact of the second marriage. Not until Stewart was dead did his alleged sons call at his home or claim they were his sons. It suffices to say that such facts do not support the contention that the decedent changed his name from Borneman to Stewart and then committed bigamy.

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.