[Civ. No. 19374.   Second Dist., Div. One.   June 22, 1953.]

DELFINA A. ORTEGA, Respondent, v. RAMON ORTEGA, Appellant.

590

Manuel Ruiz, Jr., for Appellant.

Fred G. Kennedy for Respondent.

WHITE, P. J.—Defendant husband, Ramon Ortega, appeals from an interlocutory judgment of divorce granted to plaintiff wife. ■ His attempted appeal from "the denial of defendant's motion for new trial and ruling thereon amending Findings of Fact and Conclusions of Law, and Modification of Judgment," must be dismissed, since no appeal lies from

such order, the correctness thereof being reviewable upon appeal from the judgment.

Appellant asserts that the court erred in holding, "after motion for new trial, which the court abused its discretion in having denied, that the marriage of the parties was a valid marriage." Appellant's second contention is that the court erred in holding that the wife had a community interest in certain real and personal property held in the name of appellant.

Upon trial of the action, there was testimony that the parties were married in August, 1946, and separated shortly before the trial. Mrs. Ortega testified upon cross-examination that "Quintin Bulnes was my first husband and my uncle"; that she married him in September, 1930, in the City of Los Angeles. The marriage certificate was received in evidence. Mrs. Ortega testified that she never obtained a divorce from Mr. Bulnes.

The trial court, in its memorandum opinion, made the following observations:

"Mr. Ortega claims that his marriage to Mrs. Ortega·was invalid, because on the date of their marriage, August 8, 1946, she was the wife of one Quintin Bulnes, then living, having been married to him in this country on September 30, 1930, and that this marriage was undissolved. (Civ. Code, Sec. 61, 82.) Mrs. Ortega, in return, contended by her counsel that her marriage to Mr. Bulnes was invalid because he was married at the time of her marriage to him (1930) and had a family in Mexico; and secondly, that by reason of the doctrine of *Hunter* v. *Hunter,* 111 Cal. 261 [43 P. 756, 52 Am.St.Rep. 180, 31 L.R.A. 411], and *Estate of Borneman,* 35 Cal.App.2d 455, 458 [96 P.2d 182], it is presumed that the marriage between her and Mr. Bulnes had been terminated, and that the present marriage is presumptively valid; and that the burden is upon Mr. Ortega to disprove the presumption. Apart from the Mexican certificate, both parties apparently concede that Mr. Bulnes was living at the time of defendant's marriage in 1946 to plaintiff, and that he died in September, 1947. There is some evidence based on search of the Mexican records at Mr. Bulnes' legal domicil under Mexican law revealing he never was divorced from this plaintiff there, and was not divorced from her in this country.

"This war of presumptions and inferences, however, is made immaterial by the plaintiff's own testimony. She testified . . . that she came into the country as Mr. Bulnes' niece

and upon trial she testified that he was her uncle. This not being disputed, the marriage to Mr. Quintin Bulnes was incestuous and void ab initio (Civ. Code, Sec. 59), whether or not it was bigamous.''

Upon motion for a new trial the husband stated by affidavit that on the day following the trial he received an anonymous telephone call to the effect that Delfina A. Ortega was not related to Mr. Bulnes, but that she had claimed to be his niece in order to facilitate her entry into the United States. The husband further stated upon information and belief that neither the mother nor the father of Delfina A. Ortega bore the name of Bulnes or were related to Mr. Bulnes by consanguinity.

Upon the hearing of the motion for a new trial, the following occurred:

''Mr. Ruiz (Counsel for the husband) : . . . Mrs. Ortega, under the findings of the Court, failed to prove that Mr. Bulnes had a valid, earlier marriage, which was not dissolved at the time she married him. The Court, however, found that her marriage to Mr. Bulnes was void because he was her uncle, and that the marriage was incestuous, not because Mr. Bulnes, her alleged uncle, was supposed to have been married to someone else. I understand that it is conceded by counsel that he was not her uncle.

''Mr. Kennedy (Counsel for Mrs. Ortega) : I understand that those are the facts, your Honor. .

''The Court: Then she lied.

''Mr. Kennedy: Well, I can explain when I have an opportunity, Your Honor.

''. . . . . . . . . . . .

''Mr. Kennedy: If the Court please, I was as much surprised, as no doubt Mr. Ruiz was, at the findings of the Court, in finding that the Court had found that Mrs. Ortega was not married to Mr. Bulnes because of an incestuous relationship.

''The Court: She sat here on the stand and said he was her uncle. She had said to the Immigration authorities that he was her uncle.

''Mr. Kennedy: Yes.

''The Court: Now, I am told that that is not the fact. Now, what am I going to do? Am I going to commit her for perjury, or am I going to believe now that that wasn't the fact?

''Mr. Kennedy: I was never ever led to believe, your Honor, that she wasn't married to her uncle. She always referred to this man as her uncle. She said, 'He is my uncle.'

She told me that several times, but in asking her about the surnames of the parties, she was never able to give me a correct surname. You will please note, your Honor, no argument was ever made as to any incestuous marriage, or anything else.

"THE COURT: If it is void on the face of the record, I have to hold it is void whether there is any argument about it or not."

The holding of the trial court must be upheld for two reasons.

First, the trial court had heard the sworn testimony of Mrs. Ortega that Mr. Bulnes was her uncle. Upon the hearing of the motion for a new trial, the court had before it only the affidavit of Ramon Ortega concerning an anonymous telephone call, statements on information and belief as to the surnames of plaintiff's family, and statements of counsel which indicated that counsel's information was sketchy, at best. The second ground for upholding the trial court's judgment is found in the rules concerning presumptions applicable to the situation here presented. When a person has entered into two successive marriages, a presumption arises in favor of the validity of the second marriage, and the burden is upon the party attacking the validity of the second marriage to prove that the first marriage had not been dissolved by the death of a spouse or by divorce or had not been annulled at the time of the second marriage. (*Hunter* v. *Hunter,* 111 Cal. 261 [43 P. 756, 52 Am.St.Rep. 180, 31 L.R.A. 411]; *Estate of Smith,* 33 Cal.2d 279, 281 [201 P.2d 539], and cases cited.) ". . . the burden is cast upon the party asserting guilt or immorality to prove the negative—that the first marriage had not ended before the second marriage." (*Hunter* v. *Hunter, supra,* p. 267.)

The trial court rejected certificates of Mexican authorities as to a previous marriage of Mr. Bulnes and as to his death upon the ground that they were not authenticated as required by sections 1901, 1906, and 1918, subdivision 8, of the Code of Civil Procedure. There was, as the trial court stated, "some evidence based on search of the Mexican records at Mr. Bulnes' legal domicil under Mexican law revealing he never was divorced from this plaintiff there, and was not divorced from her in this country." But the domicile or residence of Mr. Bulnes after his separation from plaintiff remains uncertain, aside from the fact that he died in Monterey, Mexico. The burden was upon defendant to present

evidence sufficient to convince the trial court that the first marriage had not been dissolved. (*Estate of Chandler,* 113 Cal.App. 630, 636 [299 P. 110].) This he did not do, but at most succeeded in creating a conflict in the evidence. This conflict was resolved by the trier of fact in favor of the validity of the second marriage, and under well settled rules the decision of the trier of fact in such circumstances may not be disturbed on appeal. The evidence here is no stronger than that presented in *Estate of Borneman,* 35 Cal.App.2d 455, 460 [96 P.2d 182], where it was held on appeal that "the proof was insufficient to rebut the presumption of innocence."

Finally, appellant complains that the evidence is insufficient to justify the finding that respondent was entitled to an undivided 21 6/7 per cent interest in and to Lots 17 to 22, inclusive, referred to as the Fontana property. While it is true that the property was being purchased by appellant husband prior to his marriage, the purchase was being made under an executory contract. The payments on the property were being made by installments of some $10 per month, both before and after the marriage of the parties. As to the source of such payments after marriage, the evidence was in conflict, the appellant contending that some of such payments resulted from the proceeds of the sale of crops grown on the land and some from his earnings after marriage. Respondent, on the other hand, testified that none of the payments were derived from the proceeds of the sale of crops because no profits ensued from the use to which the realty was put.

Confronted with this conflict in the evidence, the court concluded: "That some of the funds used to purchase the property at Fontana, lots 17 to 22 inclusive Tract 2721, as per map recorded in Book 38 of Maps, page 16, official records . . . were earned by defendant for personal services after marriage but the precise amount cannot be determined from the evidence; that such amount did not exceed $900.00 and that one-half of said sum or $450.00 at the time paid represented approximately 21-6/7% of the value of the properties."

There was substantial evidence to support the conclusion of the trial court that the husband owned an inchoate right to the property before marriage, but paid the purchase price in its entirety afterwards. It was therefore proper to apportion the property with reference to the original value, as evidenced by the contract of purchase and the value after

payments made out of community funds. (*Vieux* v. *Vieux*, 80 Cal.App. 222, 229 [251 P. 640]; *Estate of Caswell*, 105 Cal.App. 475, 482 [288 P. 102].)

■ Where, as here, there was substantial evidence that the required conditions of the husband's inchoate rights to the property were met in part with funds furnished by the community, aided by other funds arising directly from the property to be purchased, justice requires that the rights of the respective parties should be measured by the direct contributions made by the respective parties to the purchase price of the property.

■ With reference to the 1949 Pontiac automobile, the court upon substantial evidence found that it "was purchased for $2,000.00, which was paid; that of said sum, $600.00 was credited from a trade-in of an automobile owned by defendant as his separate property." From the foregoing finding the court concluded: "That the plaintiff has an undivided . . . 35% interest in and to the 1949 Pontiac automobile. . . ."

The automobile having been purchased after marriage, the court was justified in concluding that $600 paid on the purchase price thereof was the separate property of appellant and that the balance of $1,400 was paid out of community funds.

■ Where the evidence upon any issue is in conflict, the power of an appellate tribunal begins and ends with a determination of whether there is any substantial evidence, contradicted or uncontradicted, to support the conclusion arrived at by the duly constituted arbiter of the facts. With that rule in mind, we are not authorized to disturb the findings of the trial court that respondent had a 35 per cent interest in the vehicle.

For the foregoing reasons, the attempted appeal from "the denial of defendant's motion for new trial and ruling thereon amending Findings of Fact and Conclusions of Law, and Modifications of Judgment," is dismissed. The judgment is affirmed.

Doran, J., and Scott (Robert H.), J. pro tem., concurred.