**Rosanna HENDERSON**

v.

**Robert H. FINCH, Secretary of Health, Education and Welfare of the United States of America.**

**Civ. A. No. 13866.**

United States District Court
W. D. Louisiana,
Shreveport Division.

June 19, 1969.

754

Ike F. Hawkins, Jr., Shreveport, La., for plaintiff.

Edward L. Shaheen, U. S. Atty., and Leven H. Harris, Asst. U. S. Atty., Shreveport, La., for defendant.

## OPINION GRANTING SUMMARY JUDGMENT FOR PLAINTIFF

DAWKINS, Chief Judge.

Plaintiff seeks judicial review, pursuant to Section 205(g) of the Social Security Act (Act), 42 U.S.C. § 405(g), of a final decision of the Secretary of Health, Education and Welfare (Secretary), holding that plaintiff is not the widow of Jase Henderson, deceased wage-earner, and thus not entitled to widow's benefits under Section 202(e) of the Act, 42 U.S.C. § 402(e).

November 30, 1926, plaintiff and the wage-earner were ceremonially married in Caddo Parish, Louisiana. There they resided together for a number of years.[1] Then wage-earner left the matrimonial domicile, never to return, except for a few visits, none of which lasted more than a few days.

In her testimony and statements, plaintiff said that she never desired or sought a divorce from wage-earner; nor did the wage-earner ever seek a divorce from her or indicate that he desired to do so.

During the years of her separation from wage-earner, plaintiff continued to reside in Caddo Parish. She lived with at least two other men, but did not contract marriage with them.

January 9, 1939, in DeSoto Parish, Louisiana, the wage-earner ceremonially married Mattie Lee Anthony, who died in July of 1940.

March 6, 1944, in Caddo Parish, Louisiana, the wage-earner ceremonially married Ora V. Henderson. In the same year the wage-earner and Ora moved to Los Angeles, California. They resided together for the remainder of wage-earner's life, except for brief periods when the wage-earner was away on jobs or on visits.

Shortly after wage-earner's death July 7, 1963, Ora applied for and received a lump-sum death payment under 42 U.S. C. § 402(i).

December 9, 1964, Ora applied for monthly widow's benefits based on the earning record of the wage-earner. In March, 1965, the Secretary approved

---

1. The exact number of years is disputed but irrelevant.

Ora's application effective February, 1964.[2]

June 29, 1965, plaintiff filed her application for widow's benefits under the Act. Following denial of the application, a hearing was held February 13, 1968. After hearing the testimony and considering the depositions and other documentary evidence in the record, the hearing examiner, in his February 13, 1968, decision, denied plaintiff's application for widow's benefits on the ground that Ora, and not plaintiff, was the wage-earner's widow within the meaning of the Act. When the appeals council denied plaintiff's application for review, the hearing examiner's decision became the final decision of the Secretary. Thus the case now is before us for review.

Plaintiff's claim for widow's benefits is governed by 42 U.S.C. § 402(e), which provides in pertinent part:

"(e) (1) The widow (as defined in section 416(c) * * *) of an individual who died a fully insured individual, if such widow * * *

   (A) is not married,

   (B) (i) has attained age 60,
      * * *

   (C) (i) has filed application for widow's insurance benefits,
      * * *

   *    *    *    *    *    *

shall be entitled to a widow's insurance benefit for each month, beginning with—

   *    *    *    *    *    *

the first month after August 1950 in which she becomes so entitled to such insurance benefits, * * *."

42 U.S.C. § 416(c), in pertinent part, defines "widow" as "the surviving wife of an individual, but only if * * * she was married to him for a period of not less than nine months immediately prior to the day on which he died * * *."

With respect to the status of a "widow" for social security purposes, 42 U. S.C. § 416(h) (1) (A) provides in pertinent part:

"(h) (1) (A) An applicant is the wife, husband, widow, or widower of a fully or currently insured individual for purposes of this subchapter if the courts of the State in which such insured individual is domiciled * * * at the time of death, * * * would find that such applicant and such insured individual were validly married at * * * the time he died."

The question here, then, is whether the Courts of California, where the wage-earner was domiciled at the time of his death, would find that plaintiff, rather than Ora, was validly married to the wage-earner at the time of his death.

■ It is well established under California law[3] and Louisiana law,[4] that when a person has entered into successive marriages, a presumption arises in favor of the validity of the last marriage. The Secretary urges application of the more rigid California standard. Plaintiff, on the other hand, relying on California's conflicts rule that the valid-

---

2. Payments were suspended as of May, 1967, pending final determination of the validity of plaintiff's claim here.

3. Birch v. Birch, 136 Cal.App.2d 615, 289 P.2d 53 (1955); Hamrick v. Hamrick, 119 Cal.App.2d 839, 260 P.2d 188 (1953); Gainey v. Gainey, 119 Cal.App.2d 564, 259 P.2d 984 (1953); Ortega v. Ortega, 118 Cal.App.2d 589, 258 P.2d 594 (1953). See generally Annot., 14 A.L.R.2d 7 (1950).

4. The presumption, jurisprudentially introduced to the Louisiana law in Lands v.

Equitable Life Assurance Society of the U. S., 239 La. 782, 120 So.2d 74 (1960), apparently carries little weight. Succession of Choyce, 183 So.2d 457 (La.App. 2d Cir. 1966), writ refused 249 La. 64, 184 So.2d 735 (1966); Ellis v. Hayes, 168 So.2d 885 (La.App.2d Cir. 1964). See also Succession of Davis, 142 So.2d 481 (La.App.2d Cir.1962); Succession Primus, 131 So.2d 319 (La.App. 1 Cir. 1961).

ity of a marriage is determined by the law where it was contracted,[5] argues that Louisiana law is applicable.

We hold that even under the more rigid California standard, plaintiff has rebutted the presumption in favor of Ora's marriage, which was the last one, making it unnecessary for us to decide which law is applicable.

■ One of the strongest presumptions of the law is that a marriage, once being shown, is presumed to be valid.[6] The presumption favoring a second marriage, however, overcomes the presumption of continuance of the prior marriage, inasmuch as it is presumed that the prior marriage was terminated by death, divorce, or annulment. Perhaps the true rationale of the rule is found in the statement that "[T]he burden is cast upon the party asserting guilt or immorality to prove the negative,—that the first marriage had not been ended before the second marriage." [7]

■■ The presumption favoring the last marriage may be rebutted by evidence that neither death, divorce, nor annulment of the former marriage occurred.[8] Unquestionably, on the evidence presented, plaintiff rebutted that presumption here.

It is undisputed that death of the wage-earner or plaintiff did not terminate their marriage prior to wage-earner's marriage to Ora.

The Secretary searched in vain in eleven localities where the wage-earner is known to have lived after separation from plaintiff, to ascertain whether their marriage in 1926 had been judicially dissolved.[9] Evidence of these unsuccessful searches does not conclusively prove the absence of a divorce, because the wage-earner, in the course of his work, did a considerable amount of traveling;[10] but certainly this evidence is probative.

Likewise, while not conclusive,[11] plaintiff's assertions that she never obtained a divorce from the wage-earner, that no divorce papers or summons ever were served upon her, and that wage-earner never indicated to her that he desired a divorce, were highly probative.

We find relevant the testimony of wage-earner's brother, Cleveland Henderson, that he had no knowledge of a divorce between wage-earner and plaintiff. Cleveland further testified that since he maintained close contact with wage-earner, he probably would have learned of such a divorce. We note also that the record contains statements by Mary Davis, the wage-earner's sister, and Grover Henderson, the son of wage-earner and plaintiff, wherein they de-

5. Colbert v. Colbert, 28 Cal.2d 276, 169 P. 2d 633 (1946); In re Gosnell's Estate, 63 Cal.App.2d 38, 146 P.2d 42 (1944); Vaughn v. Vaughn, 62 Cal.App.2d 260, 144 P.2d 658 (1944). Inherent in plaintiff's argument is the proposition that we must apply the whole law of California, including not only its substantive law, but also its ancillary choice-of-law rules. Cf. Perez v. Gardner, 277 F.Supp. 985 (E.D.Wis.1967).

6. 35 Am.Jur., Marriage, § 192; 55 C.J.S. Marriage § 43(c).

7. Hunter v. Hunter, 111 Cal. 261, 43 P. 756, 757, 31 L.R.A. 411 (Cal.1896).

8. Goff v. Goff, 52 Cal.App.2d 23, 125 P. 2d 848 (1942); Moran v. Superior Court of Sacramento County, 38 Cal.App.2d 328, 100 P.2d 1096 (1940); Hamburgh v. Hys, 22 Cal.App.2d 508, 71 P.2d 301 (1937).

9. Records searched include those of Wilmington, Paramount, and Compton, California (1939–1962) (Tr. 122); Los Angeles, including Pasadena (1931–1962) (Tr. 124, 136–138); Baton Rouge, Louisiana (1939–1949) (Tr. 125–127); Fayette County, Kentucky (1937–1949) (Tr. 128); Bowie County, Texas (1934 to present) (Tr. 129–131); Huntington Park, California (1931–1962) (Tr. 140); New York City, Borough of Manhattan (1910–1947) (Tr. 143); San Francisco (1932–1949) (Tr. 151); Shreveport, Louisiana (1927 to present (Tr. 152).

10. Ortega v. Ortega, 118 Cal.App.2d 589, 258 P.2d 594 (1953); In re Borneman's Estate, 35 Cal.App.2d 455, 96 P.2d 182 (1939).

11. See Marsh v. Marsh, 79 Cal.App. 560, 250 P. 411 (1926).

nied knowledge of any divorce between wage-earner and plaintiff.

As we understand the administrative decision below, the Secretary does not dispute the evidence above discussed. Rather he takes the position that this evidence does not suffice to rebut the presumption that plaintiff's marriage to wage-earner ended in divorce or annulment. With this we cannot agree. We find it inconceivable that a California Court, or for that matter, any other court, would place such an intolerable burden upon a party-claimant, such as plaintiff. Neither the jurisprudence nor logic supports such a conclusion.

The Secretary's motion for summary judgment, accordingly, is denied. Although plaintiff has not filed a cross motion, she, clearly, is entitled to summary judgment. In such circumstances it is appropriate to enter judgment in the nonmoving party's favor.[12] We, therefore, reverse the decision below and remand this case to the Department of Health, Education and Welfare, which is hereby instructed to grant plaintiff the widow-payments she claims herein.

12. Sweeney v. Gardner, 277 F.Supp. 622 (Mass.1967); Moke v. Celebrezze, 236 F. Supp. 174 (N.D.Cal.1964); Brill v. Celebrezze, 232 F.Supp. 296 (E.D.N.Y.1964).