**LORNA HODGE, Plaintiff**

v.

**FRANKLYN HODGE, Defendant**

JDR No. 107-75

Territorial Court of the Virgin Islands

Div. of St. Croix

December 14, 1977

Frank Padilla, Esq., Frederiksted, St. Croix, V.I., *for plaintiff*

J. MICHAEL SPENCER, ESQ., Christiansted, St. Croix, V.I., *for defendant*

SILVERLIGHT, *Judge*

### MEMORANDUM OPINION AND ORDER

This is an action for support, instituted by Lorna Hodge, Plaintiff (hereinafter Lorna), individually, and on behalf of her two minor children, Franklyn, Jr. and Mario.

The issue of support of the minor children had been decided previously, but that decision was reversed on appeal,[1] and the cause remanded to this Court for disposition. The issue of support for Lorna which, by stipulation of the parties had been held in abeyance pending the appeal, is now also before me for disposition.

Franklyn Hodge, Defendant (hereinafter Hodge), acknowledges paternity of Franklyn, Jr. and Mario, the minor children here involved, and concedes his obligation to support them. He contends, however, that no such duty of support is owed to Lorna on the grounds that his purported marriage to her was void ab initio, Lorna having been a party to a previous marriage which had not been terminated by death or divorce. 16 V.I.C. § 1(a)(3). The issues presented, then, are:

1. What sum, if any, shall be awarded for the support of the minor children?
2. Is the marriage between plaintiff and defendant valid?
3. If the marriage is valid, what sum, if any, should be awarded to the plaintiff for support?

After carefully considering all of the testimony and evidence presented by or on behalf of both plaintiff and defendant, this Court finds as follows.

Lorna concedes that she was lawfully married to one

---

[1] Hodge v. Hodge, Civil No. 1976/627, D.C.V.I., St. Croix, June 10, 1977. This reversal was based solely on the failure of the trial court to make findings of fact pursuant to Rule 52 F.R.C.P.

James Attwood on December 17, 1955, in Antigua, British West Indies, where both parties were then domiciled. Plaintiff and Attwood lived together thereafter until 1958, at which time Attwood left Antigua, ostensibly relocated in London, England, and, according to plaintiff's testimony, was never seen nor heard from by her again.

In 1966, Lorna moved to St. Croix. In 1968, she met defendant, entered into a relationship with him which might be described as a "pseudo-marriage," and, in 1970, bore him a child, Franklyn Hodge, Jr. (one of the minor children herein). Thereafter, the parties desiring to transform their "pseudo-marriage" into a lawful union, decided to "take the plunge." They both recognized, however, that Lorna's prior marriage to Attwood, unless it was terminated in some manner, constituted an impediment to the lawful contraction of their marriage.

Defendant, therefore, as the motivating force, and plaintiff, as the acquiescing follower, commenced an effort to resolve the question of this troublesome prior marriage. In pursuance of this goal, Hodge induced Lorna to attempt to obtain a divorce from Attwood; he arranged and paid for a trip by both plaintiff and himself to Antigua for the purpose of retaining counsel to institute an action for divorce; he paid for plaintiff's counsel who, on July 30, 1973, filed a divorce action against Attwood in Antigua. No decree was ever entered in this action, nor was it pursued because neither personal nor substituted service of process was ever effected upon Attwood. Without any further action on her petition for divorce in Antigua or elsewhere, both parties being fully aware of the facts above recited, Hodge and Lorna were ceremoniously married in St. Croix on June 5, 1974.[2]

---

[2] ▮ On their marriage application, signed by both parties under oath, Plaintiff listed her "previous marital status" as "single." Defendant's Exhibit H in evidence. While Plaintiff's misstatement of fact might constitute perjury and subject her to criminal prosecution therefor (16 V.I.C. § 35(c)), it does not render her marriage void. Thompson v. Monteiro, 156 A.2d 173 (Super.Ct., Ch.Div., N.J. 1959).

All then went well in this saga of matrimonial intrigue, the parties enjoying a fair measure of wedded bliss which resulted in the birth of Mario Hodge, the second child involved in this case, on December 19, 1974. Even then, the parties continued to enjoy a reasonable degree of connubial tranquility which, however, had begun to be undermined by the specter of avarice arising out of defendant's tort claim against Hess Oil-Virgin Islands Corp., and his recovery of an award which, in the eyes of these average people, was astronomical. In April, 1975, the wedge of greed having been driven between the parties, they separated and have not cohabited since. As is so often the case, this action for support was filed, followed by defendant's denial of the validity of his marriage to plaintiff.

■ Thereafter, in pursuance of sustaining his burden of proof, Hodge hired a private investigator to ascertain where Attwood now lived or if, indeed, he was alive. The investigator traveled to Antigua where, with the help of the local constabulary, he was directed to and interviewed three persons who identified themselves as Attwood's mother, sister and nephew.[3] There is little doubt that the person the investigator spoke with was the mother of the James Attwood who was married to plaintiff herein in 1955. This fact is established by her recognition of Lorna's maiden name as it appeared on the copy of the marriage certificate presented to her by the investigator.

Attwood's mother told the investigator that she had heard from her son as late as 1974, when she received a letter from him which she showed to the investigator. There is no doubt that these proofs could have been strengthened by the use of depositions or letters rogatory (both processes being readily available to defendant), but the failure to utilize these legal forms does not preclude me from

---

[3] Hearsay testimony admissible as an exception to the hearsay rule under the Federal Rules of Evidence, 803(19), 804(4) and 805.

concluding that defendant proved, by "clear and convincing evidence" the continuance of Attwood's life by a different or less effective means.

I will now digress from the fact-finding process and address myself to an application of the law. If, as I have said before, the marriage of these parties is valid, the facts upon which support for plaintiff and the children may be awarded can be recited in full. On the other hand, if the marriage is declared invalid, those facts directed to the support of plaintiff may be omitted. In either event, logic demands that the legal issue be here resolved before I move on to the monetary issues which will then present themselves for resolution.

There is no doubt that, and this Court finds, there were two marriages: the earlier marriage of Lorna and Attwood, and the subsequent marriage of Lorna and Hodge. A marriage is prohibited and void when it is between "any persons either of whom has been previously married and whose previous marriage has not been terminated by death or a decree of divorce." 16 V.I.C. § 1(a)(3).

While defendant contends that plaintiff's prior marriage was never terminated by death or divorce and that, therefore, his later marriage to her was void, such unsupported assertions are not enough. All ceremonial marriages are presumed valid until proven otherwise. Public policy demands that all persons are presumed to act in a moral and legal fashion rather than the contrary. Schaffer v. Richardson's Estate, 93 A. 391 (Md. App. 1915).

It is well settled that there exists a strong presumption that the latter of two or more marriages involving a common participant is valid and that the prior marriage

has been terminated by death or divorce before the contracting of the last marriage.[4]

▮ Such presumption is stronger than and overcomes the presumption of the continuance of a previous marriage. Grace v. Grace, supra, at footnote 4. The ceremonial marriage of Lorna and defendant raises the presumption of validity, and once that presumption of validity of the second marriage has been raised, the party attacking the marriage has the burden of proof by clear and convincing evidence that the prior marriage has not been terminated by death or divorce. Booker v. James Spence Iron Foundry, Inc., supra; Panzer v. Panzer, supra; Simmons v. Simmons, 114 A.2d 577 (Super.Ct., App. Div., N.J., 1955).

▮ I must conclude that defendant has proved by clear and convincing evidence that plaintiff's prior marriage to Attwood has not been terminated by the death of Attwood. While I find that there is clear and convincing evidence that the marriage was not terminated by Attwood's death, I cannot rest my judgment on that factor alone. There was absolutely no evidence presented to rebut the possibility that Attwood may himself have obtained a divorce from plaintiff. Mere proof that a party is still living does not destroy the presumptive validity of a second marriage, for the impediment might have been removed by a divorce action brought by that party. Booker v. James Spence Iron Foundry, Inc., supra, Reed v. Reed, 43 S.E.2d 539 (Ga.

---

[4] Harsley v. United States, 187 F.2d 213 (D.C. Cir. 1951); United States v. Marlow, 235 F.2d 366 (5th Cir. 1956); Headen v. Pope & Talbot, Inc., 252 F.2d 739 (3rd Cir. 1958); Marris v. Sockey, 170 F.2d 599 (10th Cir. 1948); Crosby v. Ellsworth, 431 F.2d 35 (9th Cir. 1970); Henderson v. Finch, 300 F.Supp. 753 (W.D. La. 1969); Metropolitan Life Insurance Co. v. Spearman, 344 F.Supp. 665 (E.D. Ala. 1972); Sparling v. Industrial Com'n., 270 N.E.2d 411 (Ill. 1971); In Re Estate of Erwin, 317 So.2d 55 (Miss. 1975); Panzer v. Panzer, 528 P.2d 888 (N.M. 1974); Edwards v. Edwards, 222 S.E.2d 169 (Ga. App. 1975); Dale Polk Construction Co. v. White, 287 So.2d 278 (Miss. 1973); Grace v. Grace, 162 So.2d 314 (Fla. App. 1964); Booker v. James Spence Iron Foundry, Inc., 192 A.2d 860 (Super.Ct., App. Div. N.J. 1963). Annotation, 14 A.L.R.2d 7, et seq. (1950).

1947) ; Denson v. C. R. Fish Grading Co., Inc., 220 S.E.2d 217 (N.C. App. 1975) ; Dale Polk Construction Co. v. White, supra; Grace v. Grace, supra.

Once again, attention is called to the second element of the burden of proof placed upon a party challenging the validity of a second marriage, to wit: that the prior marriage has not been terminated by divorce.

Had Hodge presented evidence of the lack of a record of a divorce obtained by Attwood in either Antigua or London, England, the two places where he would have been most likely to file for divorce, by an authenticated certificate of a Clerk of the appropriate court and the appropriate Registrar of Vital Statistics (or their counterparts), it could be said, and of necessity would be said, that defendant had sustained the burden of proof imposed upon him. Such evidence, however, does not appear in the record and I cannot say, therefore, that he has rebutted the strong presumption which he attacked.

Defendant having failed to rebut the presumption, I conclude that the marriage between the parties is valid, and I so hold.

■ Although I find it unnecessary to the decision in this case, I note that even if the presumption of the validity of the second marriage had somehow been rebutted, I would reach the same result by application of the equitable doctrine of unclean hands. This would bar defendant from questioning the legality of the marriage[5] which he entered

---

[5] Tonti v. Chadwick, 64 A.2d 436 (N.J. 1949) ; Smith v. Hrzich, 61 A.2d 497 (N.J. 1948); McMichael v. McMichael, 28 So.2d, 692 (Fla. 1947); Danes v. Smith, 104 A.2d 455 (Super.Ct. App. Div., N.J. 1954); Dacunzo v. Edgye, 111 A.2d 88 (Super.Ct. App. Div., N.J. 1955) ; Tyll v. Keller, 120 A. 6 (E & A, N.J. 1923). There is also authority for the position that the husband would be estopped from now asserting the impediment of the prior existing marriage. Harlan v. Harlan, 161 P.2d 490 (Cal. App. 1945); Krause v. Krause, 26 N.E.2d 290 (N.Y. App. 1940); Saul v. Saul, 122 F.2d 64 (D.C. Cir. 1941); Goodloe v. Hawk, 113 F.2d 753 (D.C. Cir. 1940). Contra, Anderson v. Anderson, 238 A.2d 45 (Super.Ct. Conn. 1967); Dawson v. Dawson, 164 So.2d 536 (Fla. App. 1964); Untermann v. Untermann, 117 A.2d 599 (N.J. 1955); Oliver v. Oliver, 185 F.2d 429 (D.C. Cir. 1950); Metropolitan Life Ins. Co. v. Chase, 189 F.Supp. 326 (D.C.N.J. 1960).

into with full knowledge of the possible impediment—a marriage in which he cohabited with plaintiff, enjoying the benefits of home, children and bed. As was said in the dissenting opinion of Justice Wachenfeld in Tonti v. Chadwick, supra, at footnote 5, defendant,

Having tired of his bargain, the luster of which had been temporarily dimmed by petty arguments, and finding no other way out . . . attempts an annulment of the marriage. So far as I am concerned, although the petition does not so state, his main object in this litigation is to avoid his financial obligation to support and maintain the respondent.

The majority opinion denies his right to annul the marriage on the unclean hands doctrine. As a result, the appellant, although estopped from annulling the marriage, is nevertheless permitted to escape the obligation of support and maintenance. It is a peculiar and strange kind of equity which by its decree prohibits an attack upon the contract itself but abnegates the pecuniary obligation which flows from it. . . . Equity, founded as it is upon good conscience, should not grant relief to a complainant either directly or indirectly in any attempt which it deems unconscionable. The appellant's effort here to relieve himself of the obligation to support which he voluntarily assumed and continued, in my judgment, is unconscionable and the relief which he asks for should not be granted either in his request by way of annulment or by way of defense to the counterclaim for support by the wife.

On the facts of the case sub judice, I would find that the foregoing language represents a strong and appropriate view and should be here adopted. In these circumstances, equity should not permit defendant to accomplish by indirect means that which the law otherwise prevents him from accomplishing. I am supported in this conclusion by the holding of the New Jersey court in Tyll v. Keller, supra, at footnote 5, which reached a similar conclusion, although the issue of presumptive validity of a second marriage was not presented.

The final matter to be determined is what amount the defendant should pay for support of his wife and children.

247

The public policy of our Territory has been incorporated into the Virgin Islands Code which provides that a husband and wife owe each other and their children the obligation of support. 16 V.I.C. § 342. The amount that each should pay is to be proportioned to the resources of the person giving such support and to the necessities of the party receiving it. 16 V.I.C. § 345. The strength of this public policy is further evidenced by the statutory provision for criminal liability for refusal to provide for the support and maintenance of a wife or child in destitute or necessitous circumstances. 16 V.I.C. § 371.

██ I need not spend any substantial time in setting forth a factual background to establish defendant's ability to support his wife and children. He has, through counsel, conceded his ability to pay $700.00 per month for that purpose should this Court find an obligation of support. This fact is bolstered by the recognition on the part of the Court, through the exercise of judicial notice, of the receipt by defendant of a net settlement in the Hess Oil case in excess of one million dollars. Without further computation, even assuming the expenditure or other diminishment of that sum by half, the remainder, deposited in a savings account, would produce net income of $25,000.00 per annum, at a minimum, although it is more likely that on the basis of such a large sum, the income would be greater. No more need be said concerning defendant's ability to pay.

██ I, therefore, address myself now to the needs of Lorna, Franklyn, Jr., and Mario. The testimony is uncontroverted, although substantial attacks on credibility were made through cross-examination, that Lorna suffers from a heart condition and anemia which necessitate substantial expenditures for dietary purposes and medical treatment. She has testified that although she is now unemployed, she

will be required to return to work in an effort to perform her proportionate duty of support and nurture for the children. By her testimony, her needs for food, medical necessities and maid, in and of themselves, amount to $300.00 per month, excluding any and all other needs which may be attributable to Lorna. It is clear that assistance should be granted to her on the basis of her need to the extent of $175.00 per month, which figure approximates 56% of her aforesaid necessities.

In addition, her uncontroverted testimony, supported by that of Mary Aaron, a social worker employed in the Division of Mental Health, indicates that Franklyn, Jr. suffers from a form of epilepsy which, again, establishes an unusual need for medical services and attention. Over and above all figures to which I have already referred, I find by the credible testimony of plaintiff that there is a need on the part of Franklyn, Jr. for shoes, school uniforms, church clothes, underwear, socks, pajamas, special foods and medical needs in the sum of $300.00 per month. This sum is slightly less than the sum testified to by plaintiff, but represents this Court's judgment of required adjustments in certain areas which were concededly estimates rather than absolute figures.

Parenthetically, I should point out at this time that because of the medical problems from which Franklyn, Jr. suffers, he requires special educational help and a record player and television set which may be utilized for educational purposes, including but not limited to those programs offered by the Public Broadcasting System, and provision for acquisition of these items as well as a bed and dresser must be made. The uncontroverted testimony of plaintiff as to these items establishes a need for $600.00 for their acquisition.

Similarly, Mario is a child of frail health suffering from asthma and a serious allergy condition which, again,

249

necessitate unusual measures for his care and nurture. For the same items of need which were stated above on behalf of Franklyn, Jr., but attributable solely to the use of Mario, I find a requirement of support in the sum of $300.00 per month, having again adjusted for those items of estimate which I believe required adjustment. This figure is over and above and exclusive of any sums which I have allocated to either plaintiff or Franklyn, Jr. In addition to the foregoing, I find further that there is a need of an additional $250.00 to be expended for the acquisition of a bed and dresser for Mario.

Because the term support, as used in our statute, includes "all that is indispensable for maintenance, housing, clothing and medical attention," . . . and, "the education and instruction of the person supported when he is a minor," (16 V.I.C. § 341), I find that the sums which I have mentioned for the acquisition of furniture and special educational equipment are properly chargeable against the defendant Franklyn Hodge, Sr.

On the foregoing, I find and determine that Franklyn Hodge, Sr. is chargeable with the support of plaintiff Lorna Hodge, and his two minor children, Franklyn, Jr. and Mario; that plaintiff and said minor children are in need of support to the extent of $175.00, $300.00 and $300.00, respectively, for such support; that Franklyn Hodge, Sr. shall be required to pay to plaintiff the additional sum of $850.00 in gross for the acquisition of the furniture and special educational materials previously alluded to; that Franklyn Hodge, Sr. is capable of paying such sums; and, finally, that such sums, in addition to representing the needs of these unfortunate parties, are commensurate with the social position of the family.

## ORDER

In accordance with the Memorandum Opinion entered on

even date herewith; and the Court being otherwise fully advised in the premises; it is

ORDERED, ADJUDGED AND DECREED that defendant Franklyn Hodge, Sr. pay to plaintiff, through the Office of the Attorney General, Frederiksted, St. Croix, the sum of $175.00 per month, as and for support of plaintiff Lorna Hodge, said payments to commence on January 3, 1978, and to continue thereafter on the first day of each successive month until further Order of this Court; and it is further

ORDERED, ADJUDGED AND DECREED that defendant Franklyn Hodge, Sr. shall pay to plaintiff Lorna Hodge, as and for support of Franklyn Hodge, Jr. and Mario Hodge, minor children of the parties, the sum of $600.00 per month, said sum to be allocated equally between the said children, and to be paid through the Office of the Attorney General, Frederiksted, St. Croix, commencing on the 16th day of December, 1977, and on the same day of each month thereafter until said children attain their majority, are otherwise emancipated, or until further Order of this Court; and it is further

ORDERED, ADJUDGED AND DECREED that in addition to the foregoing, defendant Franklyn Hodge, Sr. shall pay to plaintiff Lorna Hodge for the use and benefit of the minor children of the marriage through the acquisition of furniture and educational equipment, including beds, dressers, television set and record player, the sum of $850.00, said sum to be paid through the Office of the Attorney General, Frederiksted, St. Croix, within 30 days after the date of entry of this Order.